Michelle Quist (Utah Bar No. 13559)
Tucker F. Levis (Utah Bar No. 17793)
**BUCHALTER, LLP**
60 E. South Temple, Suite 1200
Salt Lake City, Utah 84111
Telephone: (801) 401-8688
mquist@buchalter.com
tlevis@buchalter.com

*Attorneys for Plaintiff*
(additional counsel on signature page)

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| PAPARAZZI, LLC d/b/a PAPARAZZI ACCESSORIES, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GERALDINE SOUZA, an individual,<br><br>Defendant. | **COMPLAINT**<br><br>Civil No. |

Plaintiff Paparazzi, LLC d/b/a Paparazzi Accessories, LLC ("Paparazzi"), by and through

its undersigned counsel, submits this Complaint against Defendant Geraldine Souza ("Souza"),

and alleges as follows:

**PRELIMINARY STATEMENT**

1. This dispute arises out of Souza's breach of a Confidential Settlement Agreement

and Release (the "Settlement Agreement") entered into by Souza and Paparazzi, among others,

1

resolving more than two years of litigation stemming from her previous relationship with Paparazzi as a Paparazzi Consultant. The Settlement Agreement is attached hereto as **Exhibit A**.

2. The Settlement Agreement was clear: the Parties could not defame or disparage each other. The Settlement Agreement specifically provided that the Parties "will not at any time make, cause to make, publish or communicate to any person or entity or in any public or private forum any statements or representations . . . either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other."

3. That provision was a material term of the Settlement Agreement and was heavily negotiated because of Souza's history of defaming and disparaging Paparazzi and its founders online.

4. Despite this provision, on October 7, 2025, Souza posted a video online defaming and disparaging Paparazzi by implying that Paparazzi's jewelry caused her alleged cancer diagnosis and health problems.

5. Then, on November 18, 2025, Souza made a post on her personal Facebook page and responded to several comments on the same both implying and stating expressly that Paparazzi caused her cancer and other health problems.

6. Souza's actions are a breach of the non-disparagement provision in the Settlement Agreement and as a result, Paparazzi is entitled to injunctive and monetary relief pursuant to the terms of the Settlement Agreement.

7. Paparazzi has already secured a preliminary injunction from this Court pursuant to the provisions in the Settlement Agreement ordering Souza to "abide by the terms of the Settlement

Agreement entered between her and Paparazzi, including but not limited to, observing the non-disparagement provision of that agreement" and "cease making any statements that disparage Paparazzi (through implication or otherwise), including any statement or comments that alleges, suggests, or implies Paparazzi's products are the cause of her alleged colon cancer or any other health issues, whether she references Paparazzi by name or implication in any public or private forum, including but not limited to, forums existing on any social media or online platform." (4:22-cv-00028-DN-PK, ECF No. 167 at 17.)

8. Paparazzi commenced an arbitration with the American Arbitration Association ("AAA") on November 21, 2025, pursuant to the terms of the Settlement Agreement, seeking to recover damages for Souza's breach of the Settlement Agreement. But Souza refused to participate and ultimately AAA closed the arbitration.

9. Paparazzi now seeks to recover damages for Souza's breach of the Settlement Agreement and defamation in this Court.

## PARTIES

10. Paparazzi, LLC d/b/a Paparazzi Accessories, LLC is a Utah limited liability company with its principal place of business in St. George, Utah.

11. Defendant Geraldine Souza is an individual and resides in Hemet, California.

## JURISDICTION

12. Paparazzi and Souza are parties to the Settlement Agreement executed in December 2024.

13. Section 23 of the Settlement Agreement contains an arbitration provision providing that "[a]ny controversy, dispute or claim between the Settling Parties to this Agreement, including

3

any claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement shall be resolved exclusively and finally by confidential binding arbitration, provided that a party may apply to a court of competent jurisdiction for provisional relief in the form of a temporary restraining order or preliminary injunction, or other provisional remedy pending appointment of an arbitrator (as defined below) or pending final determination of a claim through arbitration in accordance with this provision." Ex. A ¶ 23.

14. The arbitration provision provides that "[t]he arbitration proceedings will be conducted in accordance with, and pursuant to the American Arbitration Association's ("AAA") Commercial Arbitration Rules." *Id.*

15. On November 21, 2025, Paparazzi filed a demand for arbitration with the AAA against Souza ("2025 Arbitration Demand") based on the conduct alleged herein. Ms. Souza was personally served with the Arbitration Demand and several other related documents on November 28, 2025, and the AAA subsequently administered the proceeding (the "2025 Arbitration Proceeding"). Ms. Souza, however, failed to appear or otherwise participate in the 2025 Arbitration Proceeding, as required by the Settlement Agreement, and never paid the deposits required by the AAA. As such, on February 18, 2026, the AAA formally closed the 2025 Arbitration Proceeding without ever having ever held a preliminary or final hearing.

16. Paparazzi now seeks the relief it previously sought in the 2025 Arbitration Proceeding in this Court.

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332 as Paparazzi and Ms. Souza are both residents of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

**FACTUAL ALLEGATIONS**

**A.     Paparazzi's Business**

19. Paparazzi is a fashion accessory wholesaler headquartered in Utah with salespeople ("Consultants") operating across the United States.

20. Consultants operate as independent contractors.

21. Souza was a Consultant from November 2017 until February 2021.

22. Souza was terminated by Paparazzi as a Consultant on or about February 25, 2021, for violations of Paparazzi's policies and procedures.

**B.     Souza's History of Defaming and Disparaging Paparazzi Online**.

14. After Paparazzi terminated Souza as a Consultant in February 2021, she began a campaign to defame and disparage Paparazzi.

15. Souza joined and participated in a number of social media groups comprised generally of former Paparazzi Consultants, including Tea Time, Crack the Crown, and Papa Chat United. These groups posted numerous videos online on Facebook, YouTube, and Clubhouse, among other social media websites, with the stated goal of "taking down" Paparazzi and disrupting its business.

16. Eventually those groups spent much of their time online alleging that Paparazzi's jewelry products contained lead and nickel and were dangerous to the health of those who wore or handled Paparazzi jewelry.

5

17. Souza participated in a number of Tea Time videos that were uploaded to YouTube. Each video has thousands of views on YouTube. Each video disparaged Paparazzi.

18. Souza began her involvement with Tea Time on or around October 14, 2021, when the first Tea Time Episode was posted to YouTube. In that video, Souza told her viewers that "[t]his is going to be a platform for Paparazzi consultants who have been damaged by this company who want their voices heard and feel like no one will listen to them. This is your platform." *How It All Started*, Tuesday Tea Time Episode 1 (Oct. 14, 2021) at 1:45:19-1:45:33, https://www.youtube.com/watch?v=v8JjbINXK9E&t=6347s.

19. By November 2021, Souza was telling her viewers that Paparazzi jewelry had caused her health problems. For example, in Tea Time Episode 11, while others on the video were purporting to test Paparazzi jewelry for lead content and the testing purportedly came back positive, Souza stated "I was beyond ill. I thought it was all stress. This explains so much. So much." *Paparazzi Accessories Is Not Lead & Nickel Free – Live Lead Testing*, Tuesday Tea Time Episode 11 (Nov. 19, 2021) at 1:30:40 – 1:30:50, https://www.youtube.com/watch?v=9lW25Jga-6c&t=2454s.

20. By January 2022, Souza was becoming more emboldened in blaming Paparazzi for her health problems: "I had thousands and thousands and thousands and thousands of dollars of jewelry in my home in a very small square foot home, 1500 square feet, and I had health issues that the doctors could not explain. Bad vertigo, hair loss, migraines, like unbelievable migraines. Uh, my assistants started getting the same thing. They would always get migraines when they came over to work. I had one, I had two assistants that would come to my house pickup the jewelry, and then invoice. They would pick up on Monday. They would invoice on Tuesday. Tell me why.

6

Monday and Tuesday they always had migraines. Tell me why, right? I'm sorry. It's right there. And it really, after I saw Lead-Safe Mama's report, and I started reading up and saying, how come Paparazzi doesn't show us proof of anything? The dots started connecting, and now I live in this house, my Paparazzi did not come over to this house, and not only have my assistants, they don't have any more symptoms. I have no vertigo. My hair is growing back. My skin looks amazing. That I'm sorry. That's beyond coincidence." *Ex-Elite Gone Rogue, She Threatened Us!*, Tuesday Tea Time Episode 15 (Jan. 4, 2022) at 46:08 – 47:31, https://www.youtube.com/watch?v=M91DcpAKPCA&t=2201s.

21. In Tea Time Episode 16, after purporting to review lab testing of Paparazzi's jewelry for chemical content, Souza stated "[t]he problem is Paparazzi and the problem is we would not shut the fu** up. Like they tried to make everybody else shut up. With your threats. With your bullying. With your fake a** fu**ing lawyer cease and desist bull****. I'm not shutting the fu** up. I'm sure the next one is right in court. Bring it on. I don't give a fu**. Because I know I've been sick. I know what you've put me through. And I'm not going to shut up." *We Got Official Lab Testing On Paparazzi Jewelry & It's Worse Than We Thought*, Tea Time Episode 16 (Jan. 4, 2022) at 36:36 – 37:07, https://www.youtube.com/watch?v=ErS7FpfSz9I&t=2475s.

22. In February 2022, Souza escalated her attacks on Paparazzi. Through the group Papa Chat United ("Papa Chat"), Souza, other former consultants, and at least one former Paparazzi employee conspired to steal confidential Paparazzi documents and information, including information which was defined as Confidential Information in Paparazzi's policies and procedures.

23. The former Paparazzi employee informed Souza and others that although she was terminated, she still had access to a Paparazzi corporate administrative account.

24. Souza and the others used the former employee's unauthorized access to gather as many confidential documents as they could, including the total number of Paparazzi consultants, customers, consultant profiles, and active consultants. They also obtained and shared financial data and information relating to sales and commission reports.

25. Souza and others sought to use this information in their continued harassment of Paparazzi online across various social media platforms.

26. Upon learning of Souza's and others unauthorized access, Paparazzi filed a lawsuit in federal court in Utah captioned *Paparazzi v. Sorenson, et al.*, 4:22-cv-00028-DN-PK on April 25, 2022 (the "2022 Federal Lawsuit") and moved for a temporary restraining order and preliminary injunction. (4:22-cv-00028-DN-PK, ECF No. 2).

27. The Court issued a temporary restraining order (*id.*, ECF No. 30), which was later extended into a preliminary injunction that enjoined Souza and others from attempting to obtain any of Paparazzi's Confidential Business Information; from sharing, either digitally or otherwise, any of Paparazzi's Confidential Business Information that she and others had already obtained; and from discussing, by any method and with any person, Paparazzi's Confidential Business Information (*id.*, ECF No. 37). Both orders are attached hereto as **Exhibits B and C**.

28. On August 15, 2022, Souza and others filed a Counterclaim and Third-Party Complaint in the 2022 Federal Lawsuit against Paparazzi and its owners. (*Id.*, ECF Nos. 74 & 75.) Among other allegations, Souza alleged that Paparazzi misrepresented its jewelry as lead-free

8

and nickel-free when in fact it had lead and nickel in it and that wearing jewelry containing lead and nickel can cause adverse health effects.

29. On April 3, 2023, all of the counterclaims and third-party claims brought by Souza and others in the 2022 Federal Lawsuit (except for a claim for Violation of Utah's Pyramid Scheme Act) were compelled to arbitration, and the 2022 Federal Lawsuit was stayed pending the outcome of an arbitration proceeding.

30. Souza filed an arbitration demand on July 7, 2023 (the "2023 Arbitration Demand") asserting, among other claims, violation of the Lanham Act, Utah's Truth in Advertising Act, fraudulent misrepresentation, negligent misrepresentation, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (the "2023 Arbitration Proceeding").

31. Souza again alleged in her 2023 Arbitration Demand that Paparazzi advertised its jewelry as lead-free and nickel-free but that the jewelry contained lead and nickel.

32. Souza alleged that she purchased over $1.8 million in jewelry and accessories from Paparazzi and that she could no longer sell the jewelry or had to sell it at a discount in light of her claim that it had lead and nickel in it.

33. Souza also alleged that lead and nickel are known human carcinogens that can lead to harmful health effects.

34. In December 2024, Paparazzi (and its founders) and Souza (and the other former Paparazzi consultant who had filed an arbitration) entered into the Settlement Agreement to resolve among other disputes, the 2023 Arbitration Proceeding.

### C. The Settlement Agreement

35. In light of Souza's history of defaming and disparaging Paparazzi online, Paparazzi specifically negotiated for certain material terms in the Settlement Agreement to protect it if Souza disparaged Paparazzi or its owners.

36. One material term in the Settlement Agreement is the non-disparagement provision in Section 8, which provides that the Parties "will not at any time make, cause to make, publish or communicate to an person or entity or in any public or private forum any statements or representations . . . either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other":

8. **Non-Disparagement.** The Parties either through themselves or their agents, will not at any time make, cause to make, publish, or communicate to any person or entity or in any public or private forum any statements or representations (including, without limitation, the repetition or distribution of derogatory rumors, allegations, negative reports or comments) either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other, including (i) the Paparazzi Parties or Claimants or (ii) Paparazzi's independent consultants or (iii) either Parties' subsidiaries, employees, agents, products attorneys (including the law firms of Nelson Mullins Riley & Scarborough LLP, Buchalter, P.C., and James Dodge Russell & Stephens, P.C.), and insurers (including Auto-Owners Insurance) in relation to or affiliation with the Paparazzi Parties or Claimants. For the avoidance of doubt, this provision also specifically prohibits Claimants from (i) participating in any online groups that discuss the Paparazzi Parties, Paparazzi's employees, or Paparazzi's products or (ii) communicating in any form regarding heavy metal testing or content of Paparazzi's jewelry or Paparazzi's business practices and specifically prohibits Claimants from participating in any online, social media, or other groups that discuss the Paparazzi Parties. Claimants also agree that the independent consultants that sell Paparazzi jewelry are not the Paparazzi Parties' agents. The Paparazzi Parties agree that the customers, independent contractors, or other individuals in the "Crack the Crown" group or affiliated therewith are not the agents of Claimants. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall prevent or preclude any Party from providing truthful testimony and information (1) in response to a legal subpoena or court order to testify in connection with any judicial proceeding or (2) in connection with an investigation or proceeding conducted by any federal, state, or local regulatory or law enforcement agency, in which the provisions of Section 8 apply. Should Claimants breach this provision of the Settlement Agreement, they agree that the provisions set forth in Paragraph 22 shall apply. Claimants agree that this provision applies regardless of where Claimants reside.

37. In light of Souza's previous conduct, the parties also agreed to a liquidated damages provision. Section 21 of the Settlement Agreement provides that the non-breaching party is entitled to injunctive relief as well as liquidated damages ████████████████████████ ████████████████████████████████ :

21. **Breach and Liquidated Damages.** In the event of a breach or threatened breach of any provision of this Agreement, the breaching Party or Party threatening breach acknowledges and agrees that the other (non-breaching) Party will suffer irreparable harm and further acknowledges and agrees that the other Party's remedies at law are inadequate, and that the other Party shall be entitled to an immediate injunction restraining such breach or potential breach as well as other equitable relief, but nothing herein shall be construed as prohibiting the other Party from pursuing any other remedy available for such breach or threatened breach.



### D.      Breach of the Settlement Agreement

#### 1.      October 7, 2025 "Live"

38.     After Paparazzi terminated Souza as a Consultant, Souza started an online business selling jewelry and accessories. Souza maintains a Facebook page for the online business called Feisty Bombshells VIP. *See* https://www.facebook.com/feistybombshells.

39.     On or about October 7, 2025, a little over nine months after executing the Settlement Agreement, Souza posted a recording of her going "live" on her Feisty Bombshells VIP Facebook page (the "October 7 Video"). In the October 7 Video, she defames and disparages Paparazzi by implying that Paparazzi caused her colon cancer diagnosis and other health problems and leading her viewers to infer that Paparazzi caused her cancer diagnosis and health problems. A transcript of the video is attached hereto as **Exhibit D**.

40.    The October 7 Video discusses her colon cancer diagnosis as well as other health problems that she has suffered since 2019. *See, e.g.*, Exhibit D at 4:23-25 ("I don't know if I have Crohn's and colon cancer. I don't know if it's just the colon cancer. I don't f***ing know. All I know is I'm very sick."); 50:8-12 ("Yes, Jenny, I do have cancer, babe. You cannot just speak positive and it goes away. I have cancer. There's – that is no ifs, ands, or buts, honey baby cakes. I have cancer. It is a very big cancer.").

41.    Referring to her health problems, including her cancer diagnosis, Souza tells her viewers that "I started looking into things, as some of you know who have followed me, and I found some things, as some of you know, and all of my assumptions, thoughts, beliefs, ideas were true." *Id.* at 2:19-22. Souza is referring to her followers from her various social media groups, including Tea Time, and her allegations that Paparazzi's jewelry contains lead and nickel.

42.    Souza continued, "companies know how to get away with sh**, and they don't have to take responsibility for their sh**." *Id.* at 2:24-3:1. The "company" Souza is referring to is Paparazzi.

43.    She goes on to tell her viewers that companies tell you that "[y]ou can't indefinitely know it's because of this, and you can't indefinitely know it's because of that, and it could [be] because of this and it could be because of that. And so they don't have to take any responsibility for blatant actions." *Id.* at 3:2-6. The "it" she is referring to is either cancer specifically or health problems more generally and the "they" she is referring to is Paparazzi.

44.    Souza further states that "[s]ince I had my eyes opened to product manufacturers who literally don't care what – the lies they say and the sh** that we handle – like I've been really gung-ho on it, you know?" *Id.* at 3:8-11. Paparazzi is a wholesaler of jewelry and Paparazzi

13

Consultants like Souza would have handled the jewelry extensively in order to sell it to end customers.

45.     Souza also told her viewers that "[y] can't just detox your body, not when it's poisoned like this. . . . I'm also very much a realist.  I am.  I get that there's miracles, but the fact of the matter is the amount of toxins that I surrounded myself with, unbeknownst to me, is a lot. It was – it was more than anybody else.  Let's get real, right?  Let's get real." *Id.* at 6:2-11.  Souza's statements about toxins and heavy metals are a reference to her time as a Paparazzi Consultant, where she was at one time one of the top Paparazzi Consultants by sales volume.

46.     Although Souza never uses the word Paparazzi in the October 7 Video, it is clear that she is referring to Paparazzi:

a.  Souza states at one point in the October 7 Video: "I'm trying to be super careful with my words, 'cause I have to, and there's many of you here who already know timelines.  You can put two and two together.  You're very wise." *Id.* at 4:2-5. Souza is referring to the Settlement Agreement and the non-disparagement provision in Section 8.

b.  Souza states "[b]ut I'm very thankful for what Washington has done and did.  I'm very disappointed with California's actions. I think that they should be the forefront leader on it, but they're not because people are greedy and selfish and it – it hurts certain people's pocketbooks if they go after them, right?" *Id.* at 4:5-11.  Souza is referring to a March 3, 2025 Consent Decree that Paparazzi and its founders entered into with the State of Washington in King County Superior Court (the "Washington Consent Decree"), which was announced in a press release by the Washington State

Office of the Attorney General on March 4, 2025.[1]  Souza's reference to California refers to her frustration that California has not done the same.

c.  Souza again references the Washington Consent Decree stating, "[t]he attorney general should take this sh** serious and they should do regulations in states. They should be regulating this sh** in their states. That's all I got to say. You know? And the – the little person, the small person tries to fight it, tries to expose it and fight it and educate people.  And companies who have tons and tons of dollars can lie their way, with no penalties, and unless you get a whole army . . . together – and at least Washington took action. Thank you Washington attorney general, you're f***ing amazeballs.  Thank you for protecting people. Thank you for protecting the people in that state." *Id.* at 17:10-22.

d.  After discounting other potential causes of her colon cancer, Souza states that "ever since 2019, [she's] had bowel issues. Gee, [she] wonder[s] where those came from all of a f***ing sudden?  F***ing companies don't give a sh**." *Id.* at 14:11-13. She continued to rule out other sources of her cancer by claiming that she has no family history of colon cancer.  A few minutes later in the October 7 Video, she added, "I'm just saying, I f***ing know where this sh** came from.  That's all I'm saying.  I f***ing know where this sh** came from.  I just want you guys to be aware of what you're purchasing and what you're handling and what you expose yourself to, you know?" *Id.* at 15:11-15.

---

[1] https://www.atg.wa.gov/news/news-releases/ag-investigation-ends-alleged-jewelry-pyramid-scheme-washington-state.  The Consent Decree is attached hereto as **Exhibit E**.

e.  Souza also tells her viewers that her twin sister was also getting checked, because she was also having health issues. She states "as you know, my twin sister followed in my footsteps. As you know, for those of you who are good at connecting the dots, connect the dots." *Id.* at 16:9-11. Souza's twin sister was also a Consultant with Paparazzi.

f.  Souza repeatedly states she is "the master hacker," which is a reference back to the lawsuit in this case accusing Souza and others from stealing Paparazzi's confidential information and aiding a former Paparazzi employee to use her Paparazzi account to steal confidential information. *Id.* at 32:1-3 ("although I am the master hacker, I can't even figure out how to set up my printer"); 32:4-5 ("Don't forget, I am the master hacker. Any of you know – who know me know that's a f***ing joke."); 33:15-17 ("Stacy, the hacker part low key was my favorite part of the bullsh** right? Master hacker."); 38:12-14 ("Gary, you're going to laugh at me 'cause I don't know what the f*** I'm talking about, even though I am a master hacker"); 38:24-39:1 ("Oh, I have to explain to you the ma – actually, some of my people here can explain to you the master hacker bullsh**.").

47.  In addition, while Souza avoided using Paparazzi's name, her followers, many of whom had been following her throughout the 2022 Federal Lawsuit and 2023 Arbitration Proceeding with Paparazzi, knew she was referring to Paparazzi.

48.  Consistent with her admonition to connect the dots, her followers commented:

a.  "I love you from the bottom of my heart, You know how I started and how you educated me to GET out of Paparazzi!!!!"

16

b. Another wrote, "You need to have a good cry, you will [sic] come out of it feeling a bit lighter, I haven't watched you for a while and had no idea what is going on with you and I am soooooo sorry, dam [sic] paparazzi."

c. Someone else wrote, "I've been so sick since i [sic] sold paparazzi."

d. In an apparent response to Souza's comment that she had to be careful with her words, one follower wrote, "I don't have to be careful with my words. Paparazzi is bad!"

Comments to Souza Facebook Live Video Recording, 4, 5, 64, 78, attached hereto as **Exhibit F**.

49.    Souza could see these comments in real time during her October 7 Video and at times in the video she responds to the comments.  Souza could have told her viewers it was not Paparazzi she was referring to in the video.  She did not do that.

50.    At minimum, Souza's comments disparage and defame Paparazzi by implication and inference, which is prohibited by the Settlement Agreement.

**2.    November 18, 2025 Facebook Post**

51.    Souza maintains a personal Facebook page under the name Geraldine Feisty Souza. She has 7,500 followers.

52.    On or about November 18, 2025, Souza posted on her personal Facebook page "[m]y colon cancer genetic markers are negative.  My issues started 2019.  Diverticulitis then cancer- hummm."  That post and the comments to the post are attached hereto as **Exhibit G**.

53.    The comments to Souza's November 18, 2025 Facebook post (the "November 18 Post"), both by Souza's followers and by Souza, make it clear she was implying in her post that Paparazzi caused her cancer and health problems.  Souza directly stated in the comments Paparazzi

17

caused her cancer and "liked" posts saying the same. Even when Souza did not directly reply to a comment linking Paparazzi to her cancer, Souza either did not correct or dispute the comment or, as noted above, "liked" the comment.

54. Souza's followers wrote in response to the November 18 Post the following comments, among others:

     a. "*cancer-azzi* I bought SO MUCH stuff from you!! I think I will throw it all away. I didn't handle anywhere near as much as you did, but still…" Ex. G at 1 (emphasis added). Souza clicked on the thumbs up emoji indicating she liked the message.

     b. "Dam makes me wonder.. I got breast cancer right after handling *papa*." Souza replied "so sorry". *Id.* at 4 (emphasis added).

     c. "Do you get cancer from wearing *paparazzi* jewelry all the time". Souza replied "wearing it? I handled thousands of pieces a week – no it's wasn't from just wearing it." *Id.* at 5 (emphasis added).

     d. In response to a follower who wrote "I still believe it's what we eat and breathe," Souza replied 'people need to be aware what they are exposing themselves to and DO NOT TRUST COMPANIES who claim it's safe! If you're going to have constant exposure test it!!" *Id*.

     e. "I've watched you over the past few years because I just thought you were an awesome business owner. I think that *Papa* puke may have had something to do with that but of course that will be hard to Prove." Souza

responded "tysm!!", which means "thank you so much". *Id.* at 6 (emphasis added).

f.    "I threw over 2,000+ pieces of ***papa*** in the garbage!!!" *Id.* at 7 (emphasis added).

g.    "My cousin sold ***papa*** for a few years and I bought a lot of stuff that I have never worn, do you mind if I share your story with her". Souza replied "please share". *Id*. (emphasis added).

h.    "Does this match up with the heavy metal test from ***papa***". Souza replied "when it all points to the timeline! Yup and yup". The same person replied against saying "when I told everyone I had throat cancer Noone believed it was from ***papa***". Another person replied to Souza's statement saying, in part, "Omg I'm so sorry this is truly heartbreaking and disgusting that they are still operating that business!! If I'm being completely honest I hope you get justice and fu** it a fat a** check too!!!!!!!! Cause this doesn't just go away and they need to stop hurting people this is beyond serious!!" *Id.* at 10 (emphasis added).

i.    "Geri, I promise you when I read this I thought of ***papa*** right away." Souza responded by clicking on the thumbs up emoji to like the post. Another follower responded to that post writing "that was my very first thought too. Nickel and lead free my ass". Souza again responded by clicking on the thumbs up emoji to like the post. *Id.* at 10-11 (emphasis added).

j.　　　"Heavy Metal???  Any correlation????"  Someone replied to that comment stating "I agree, I worked the same 'company' me and my teammate both got cancer.  The coincidence of this is alarming.  There are many n others who sold that have fought, and currently fighting."  Souza clicked on the heart emoji indicating she loved the post.  Souza then replied stating "omg!!  So many ppl with cancer!! This is bullshit!!!!"  The woman who posted that she "worked the same 'company'" posted again in a reply and stated "I think there's something in that jewelry.  After all it wasn't lead and nickel free and the metals contained cancer causing agents from my research.  So many reps, just doesn't add up."  Souza replied to that comment writing "agreed!".  *Id.* at 11-12.

k.　　　"Well I hope there is hell to pay for all this is doing to people.  I hope there is enough evidence and proof to help you and others fight this company and stop them in their tracks."  *Id.* at 12.

l.　　　"Please explain this to me?!?!?!"  Souza replied "this means that my cancer is not from genetic predisposition.  For those who have followed me know that I started getting a sick a year after selling on line.  Stayed with diverticulitis – now stage 3 colon cancer.  Since it's not genetics it's from an outside source . . . ."  One of Souza's followers replied to her comment writing "makes me wonder if it came from that 'jewel' hmm things that make you go hmm".  Souza clicked on the thumbs up emoji indicating she

20

liked the message. Another follower replied to Souza's comment stating "[m]y mind went to **popa** right away!" *Id.* at 12-13 (emphasis added).

m. "What year did you start with **papa** puke?" Souza responded "2018!" The follower replied "well that explains alot doesn't it! Keep pushing forward, you got this!" Souza clicked on the thumbs up emoji indicating she liked the message. *Id.* at 13 (emphasis added).

n. "[N]ow that is good news right that it was negative?" Souza replies "that's good for my family members and especially my twin! However, that means the cancer wasn't from genetic history. For those who have followed me, you can definitely connect the dots to conclude what my gastric issues are from!" *Id.* at 16.

o. "Oh God. This really makes you wonder, huh? Especially after all those results you guys found testing that crap." *Id.* at 18.

55. Souza's November 18 Post not only implied or inferred that Paparazzi caused her cancer, she directly stated it did and encouraged her followers to spread her lies.

56. Souza's November 18, 2025 Facebook post and correspondence in the comments section of the post disparage and defame Paparazzi, which is prohibited by the Settlement Agreement.

57. On November 21, 2025, Paparazzi filed a motion to reopen the 2022 Federal Lawsuit and an Application and Motion for Temporary Restraining Order and Preliminary Injunction (the "PI Motion") seeking to require Souza to abide by the terms of the Settlement

Agreement, including but not limited to, the non-disparagement provision based on Souza's October 7 Video and November 18 Post.  (4:22-cv-00028-DN-PK, ECF No. 149.)

58.    On December 22, 2025, the District Court issued a Memorandum Decision and Order Granting Paparazzi's Application and Motion for Preliminary Injunction.  (4:22-cv-00028-DN-PK, ECF No. 167.)

59.    In granting Paparazzi's PI Motion, the Court held that Paparazzi "has shown a substantial likelihood it will succeed on the merits of its breach of contract claim" (*id.* at 12), concluding "Souza breached the non-disparagement provision when she made comments implying that Paparazzi's products caused her to develop colon cancer and other health issues" (*id.* at 13). The Court went on to hold that "[t]hese comments directly disparage Paparazzi's business and reputation." (*Id.* at 13.)

60.    The District Court ordered that Souza (1) "[m]ust abide by the terms of the Settlement Agreement entered between her and Paparazzi, including but not limited to, observing the non-disparagement provision of that agreement" and (2) "[m]ust cease making any statements that disparage Paparazzi (through implication or otherwise), including any statement or comments that alleges, suggests, or implies Paparazzi's products are the cause of her alleged colon cancer or any other health issues, whether she references Paparazzi by name or implication in any public or private forum, including but not limited to, forums existing on any social media or online platform." (*Id.* at 17.)

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**(Breach of Contract)**

61.    Paparazzi incorporates by reference the allegations in the previous paragraphs of its Complaint as if fully set forth herein.

22

62. The Settlement Agreement represents a mutually binding contract upon all parties to it, including, but not limited to, Paparazzi and Souza.

63. Souza was bound by each and every term contained in the Settlement Agreement.

64. Paparazzi performed all of its obligations under the Settlement Agreement.

65. The Settlement Agreement contains a non-disparagement clause that prohibited Souza from making, publishing, or communicating to any person in any public or private forum any statement or representation (including any derogatory rumor, allegation, or negative comment) either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of Paparazzi.

66. Souza's statements described above that were contained in the October 7 Video and November 18 Post breach the terms of the non-disparagement clause.

67. Souza published to all of her followers that Paparazzi's products caused her to develop colon cancer, and potentially Crohn's Disease and/or an autoimmune condition.

68. Consistent with Section 21 of the Settlement Agreement, Souza agreed that if she violated the non-disparagement clause in the Settlement Agreement that she would "be liable for liquidated damages in the amount equal to ███████████████████████ ████████████████████████████████████ or the actual damages suffered by the Paparazzi Parties as a result of the breach, whichever is greater."

69. Souza further breached the Settlement Agreement by failing to arbitrate the dispute arising out of her breaches of the Settlement Agreement as required by Section 23 of the same.

70. In the Settlement Agreement, Souza agreed that the prevailing party in any proceeding commenced to enforce the terms of the Settlement Agreement would be entitled to an award "of reasonable attorneys' and accounting fees, expenses and other out-of-pocket costs incurred by such party (including any cost and fees incurred by and payable to the Arbitrator and any costs incurred in enforcing any such award)" in addition to any other damages or relief awarded.

71. Therefore, as a result of Souza's breaches of the Settlement Agreement, Paparazzi is entitled to the liquidated damages set forth in Section 21 of the Settlement Agreement; attorneys' fees and accounting fees, expenses and other out-of-pocket costs incurred by Paparazzi resulting from her breaches of the Settlement Agreement (including any costs and fees related to the Arbitration), and any such further relief deemed just and proper by the Court in this action.

**FOR A SECOND CAUSE OF ACTION**
**(Defamation *Per Se*)**

72. Paparazzi incorporates by reference the allegations in the previous paragraphs of its Complaint as if fully set forth herein.

73. Souza published her October 7 video and the above-pled statements alleging that Paparazzi's products caused her serious health issues and that Paparazzi valued profits over public health through her Feisty Bombshells VIP Facebook page with approximately 21,000 followers.

74. Although Souza did not mention Paparazzi by name, the extrinsic facts and circumstances demonstrate that Souza was clearly referring to Paparazzi as evidenced by her followers' comments referencing Paparazzi by name.

75. Souza published her November 18 Post and related comments alleging that Paparazzi's products caused her cancer through her personal Facebook page that has approximately 7,500 followers.

76. Souza's comments and statements that Paparazzi's products caused her alleged colon cancer and other health issues were false.

77. Souza made the aforementioned statements knowing they were either false or with reckless disregard of their falsity.

78. Souza has no recognizable privilege to make the defamatory statements she has made about Paparazzi.

79. Souza's comments are defamatory *per se* in that they are of such common notoriety that damage can be presumed from the words alone.

80. Paparazzi was proximately harmed by the willful, wanton, malicious and egregious defamatory statements by Souza. Consequently, Paparazzi is entitled to recover from Souza, compensatory damages and punitive damages.

### FOR A THIRD CAUSE OF ACTION
**(Defamation)**

81. Paparazzi incorporates by reference the allegations in the previous paragraphs of its Complaint as if fully set forth herein.

82. Souza published her October 7 Video and the above-pled statements alleging that Paparazzi's products caused her serious health issues and that Paparazzi valued profits over public health through her Facebook page with approximately 21,000 followers.

83. Although Souza did not mention Paparazzi by name, the extrinsic facts and circumstances demonstrate that Souza was clearly referring to Paparazzi as evidenced by her followers' comments referencing Paparazzi by name.

84. Souza published her November 18 Post and related comments alleging that Paparazzi's products caused her cancer through her personal Facebook page that has approximately 7,500 followers.

85. Souza's comments and statements that Paparazzi's products caused her alleged colon cancer and other health issues were false.

86. Souza made the aforementioned statements knowing they were either false or with reckless disregard of their falsity.

87. Souza has no recognizable privilege to make the defamatory statements she has made about Paparazzi.

88. Paparazzi was proximately harmed by the willful, wanton, malicious and egregious defamatory statements by Souza. Consequently, Paparazzi is entitled to recover from Souza, compensatory damages and punitive damages.

**FOR A FOURTH CAUSE OF ACTION**
**(Injunctive Relief)**

89. Paparazzi incorporates by reference the allegations in the previous paragraphs of its Complaint as if fully set forth herein.

90. Section 21 of the Settlement Agreement provides that "[i]n the event of a breach or threatened breach of any provision of this Agreement, the breaching Party or Party threatening breach acknowledges and agrees that the other (non-breaching) Party will suffer irreparable harm

and further acknowledges and agrees that the other Party's remedies at law are inadequate, and that the other Party shall be entitled to an immediate injunction restraining such breach or potential breach as well as other equitable relief, but nothing herein shall be construed as prohibiting the other Party from pursuing any other remedy available for such breach or threatened breach."

91. Section 23 of the Settlement Agreement provides that although disputes must be submitted to confidential binding arbitration, "a party may apply to a court of competent jurisdiction for provisional relief in the form of a temporary restraining order or preliminary injunction, or other provisional remedy pending appointment of an Arbitrator (as defined below) or pending final determination of a claim through arbitration in accordance with this provision."

92. Souza has breached Section 8 of the Settlement Agreement by disparaging and defaming Paparazzi.

93. Paparazzi expects to achieve actual success on the merits.

94. The parties agreed in the Settlement Agreement that any breach of the Settlement Agreement would cause the non-breaching Party to suffer irreparable harm and that the non-breaching party's remedies at law are inadequate.

95. The parties agreed that the non-breaching party would be entitled to an immediate injunction restraining such breach.

96. Irreparable harm will result to Paparazzi unless an injunction is issued as Souza has demonstrated a repeated history of disparaging and defaming Paparazzi online. Paparazzi has suffered harm, and will suffer additional harm, in the form of lost customers, loss of goodwill, reputational harm, lost market share, and lost future business.

97. The threatened injury to Paparazzi outweighs the harm that the injunction may cause to Souza. Indeed, an injunction would merely be enjoining her from what she has already agreed to do.

98. The injunction, if issued, will not adversely affect the public interest and, in fact, will benefit the public interest, as the enforcement of contracts is recognized as a public interest.

**WHEREFORE**, Paparazzi respectfully requests that this Court enter judgment against the Souza for the following:

(a) for an award of the liquidated damages required by the Settlement Agreement;

(b) for an award of compensatory damages, lost profits, and punitive damages for Souza's defamatory statements concerning Paparazzi;

(c) for an award granting permanent injunctive relief prohibiting Souza from violating Section 8 of the Settlement Agreement;

(d) for an award requiring Souza to pay the attorneys' fees and costs associated with this matter (including all costs and fees incurred by Paparazzi related to the 2025 Arbitration Proceeding) as required by the Settlement Agreement; and

(e) and for such other and further relief as this Court deems just and proper.

[*signatures on next page*]

28

Respectfully submitted this 7th day of April, 2026.

**BUCHALTER, LLP**

By: */s/ Tucker F. Levis*
    Michelle Quist (Utah Bar No. 13559)
    Tucker F. Levis (Utah Bar No. 17793)
    60 E. South Temple, Suite 1200
    Salt Lake City, Utah 84111
    Telephone: (801) 401-8688
    mquist@buchalter.com
    tlevis@buchalter.com

**NELSON MULLINS RILEY
& SCARBOROUGH LLP**

    Robert L. Lindholm (*pro hac vice* forthcoming)
    301 South College Street, 23rd Floor
    Charlotte, NC 28202
    (704) 417-3000
    robert.lindholm@nelsonmullins.com

    Wesley T. Moran (*pro hac vice* forthcoming)
    3751 Robert M. Grissom Parkway
    Myrtle Beach, SC 29577
    (843) 946-5686
    wes.moran@nelsonmullins.com

*Attorneys for Plaintiff*