# EXHIBIT A

Docusign Envelope ID: E96C5D35-9FA4-46EF-8A77-EECEFC672BD7

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

**THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is made and entered into on the last date set forth on the signature pages below ("Effective Date"), by and between Geraldine Souza and Jennifer Carroll ("Claimants"), on the one hand, and Paparazzi, LLC ("Paparazzi"), Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve (collectively, the "Paparazzi Parties"), on the other hand. Claimants and the Paparazzi Parties are each a "Party" to this Agreement and shall collectively be referred to as the "Settling Parties."

## RECITALS

This Agreement is entered into with reference to the following facts and recitals which are true to the best of the Settling Parties' knowledge and belief, and are made part of this Agreement:

**WHEREAS**, on or about November 9, 2017, Geraldine Souza ("Souza") registered to be a Paparazzi Consultant;

**WHEREAS**, on or about February 7, 2019, Jennifer Carroll ("Carroll") registered to be a Paparazzi Consultant;

**WHEREAS**, on or about January 21, 2020, Carroll resigned from being a Paparazzi Consultant;

**WHEREAS**, on or about February 25, 2021, Paparazzi terminated Souza as a Paparazzi Consultant alleging violations of Paparazzi's Policies & Procedures;

**WHEREAS**, on April 25, 2022, Paparazzi filed a complaint in the United States District Court for the District of Utah, which was captioned *Paparazzi v. Sorenson, et al.*, 4:22-cv-00028-DN-PK (the "Federal Lawsuit"), alleging that Souza, Carroll, and others (including an ex-Paparazzi employee) conspired to and misappropriated Paparazzi's confidential information through the unauthorized access of online Paparazzi accounts;

**WHEREAS**, on August 15, 2022, Claimants filed a Counterclaim and Third-Party Complaint in the Federal Lawsuit against the Paparazzi Parties;

**WHEREAS**, on April 3, 2023, all of the counterclaims and third-party claims that Claimants asserted in the Federal Lawsuit, except their claims for Violation of Utah's Pyramid Scheme Act, were compelled to arbitration, and the Federal Lawsuit was stayed pending the outcome of an arbitration proceeding, which was initiated by Claimants on July 7, 2023 (the "Arbitration Proceeding");

**WHEREAS**, on January 17, 2024, Paparazzi filed a complaint against Claimants in the Fifth Judicial District Court, Washington County, State of Utah, which was captioned *Paparazzi, LLC v. Geraldine Souza and Jennifer Carroll*, Case No. 240500037 (the "State Lawsuit");

1

**WHEREAS**, Claimants filed their Answer and Counterclaim in the State Lawsuit on May 2, 2024;

**WHEREAS**, the Paparazzi Parties deny all allegations asserted by Claimants in the Arbitration Proceeding, the Federal Lawsuit, and the State Lawsuit (collectively the "Litigation");

**WHEREAS**, Claimants deny all allegations asserted by the Paparazzi Parties in the Litigation;

**WHEREAS**, the Settling Parties desire to fully and completely resolve the disputes between them in good faith, and settle any and all claims, defenses, and/or counterclaims that were asserted or that could have been asserted in the Litigation or any other proceeding;

**NOW THEREFORE**, in consideration of the mutual obligations, promises, and commitments set forth herein, and for such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Settling Parties, the Settling Parties hereto, intending to be legally bound, agree, in full and final settlement of the claims set forth, or that could have been set forth, in the Litigation as follows:

## DEFINITIONS

Unless the context of this Agreement otherwise requires, (i) a word of any gender includes the corresponding words of any other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; and (iii) the words "include," "includes" and "including" mean include, includes and including without limitation.

## TERMS AND RELEASES

1. **Settlement Payment**.



██████████████████

**Return of Paparazzi Jewelry**.  Paparazzi agrees to provide Claimants with prepaid shipping labels and Claimants agree to ship to Paparazzi, in accordance with the provided labels, all Paparazzi jewelry remaining in Claimants' possession, custody, or control including the jewelry described in Claimants' Second Amended Arbitration Demand and Second Supplemental Initial Disclosures submitted in the Arbitration Proceeding that are in Claimants' possession.  The jewelry shall be shipped within ten (10) business days of after the Paparazzi Parties have made the Settlement Payment and provided Claimants with prepaid shipping labels. Claimants' obligations under this section are satisfied by providing the required materials to UPS or other commercial carriers, in accordance with the prepaid labels provided by the Paparazzi Parties, and bear no responsibility for lost, stolen, or damaged packages during shipping.

2. **Stipulations of Dismissal.**  Claimants and the Paparazzi Parties shall execute and submit stipulations of dismissal, dismissing all claims with prejudice that any Party has asserted in the Arbitration Proceeding and State Court Lawsuit within 7 calendar days of the Effective Date, with each party bearing their own costs and attorney fees.

3. **Release by Claimants.**  Claimants, on behalf of themselves and their successors, assigns, heirs, beneficiaries, agents, and representatives (collectively, the "Claimant Releasing Parties") hereby release and forever discharge from any claims, counterclaims, proceedings, demands, damages, debts, liabilities, obligations, costs, penalties, accounts, liens, causes of action, covenants, judgments, loss, expenses, suits, damages, attorneys' fees, and executions of every kind and nature whatsoever, in law, equity or otherwise, whether now known or unknown, foreseeable or unforeseeable, foreseen or unforeseen, suspected or unsuspected, which the Claimant Releasing Parties ever had, owned or held or now have, own or hold, against the Paparazzi Parties or their current or former officers, employees, directors, partners, general partners, limited partners, managing directors, members, agents, stockholders, trustees, shareholders, representatives, principals, agents, affiliates, parents, subsidiaries, joint ventures, predecessors, successors, assigns, beneficiaries, heirs, executors, personal or legal representatives, insurers, and in-house and outside legal counsel, wholesalers, vendors, manufacturers, licensors, licensees, customers, purchasers, third party re-sellers, and commonly controlled entities (collectively, the "Paparazzi Released Parties"). Claimants acknowledge that unknown losses or claims may exist and that present losses may have been underestimated in amount or severity. The Settling Parties took those possibilities into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between the Parties with full knowledge of the possibility of such unknown claims, were given in exchange for a full accord, satisfaction, and discharge

3

of all claims. Claimants further agree that they will not file, participate in, encourage, join, or cause to be filed any claim, suit, investigation, arbitration, proceeding or action of any kind for damages or other relief against the Paparazzi Released Parties. The Parties agree that this Agreement may be pleaded as a full and complete defense to any and all released claims pursuant to this Agreement. The Parties further acknowledge and consent that the Agreement may be used as the basis for an injunction to halt any action, suit, or other proceeding.

4. **Release by the Paparazzi Parties.** The Paparazzi Parties on behalf of themselves and their current or former officers, employees, directors, partners, general partners, limited partners, managing directors, members, agents, stockholders, trustees, shareholders, representatives, principals, agents, affiliates, parents, subsidiaries, joint ventures, predecessors, successors, assigns, beneficiaries, heirs, executors, personal or legal representatives, and insurers (collectively, the "Paparazzi Releasing Parties"), hereby release and forever discharge from any claims, counterclaims, proceedings, demands, damages, debts, liabilities, obligations, costs, penalties, accounts, liens, causes of action, covenants, judgments, loss, expenses, suits, damages, attorneys' fees, and executions of every kind and nature whatsoever, in law, equity or otherwise, whether now known or unknown, foreseeable or unforeseeable, foreseen or unforeseen, suspected or unsuspected, which the Paparazzi Parties ever had, owned or held or now have, own or hold, against the Claimants or their successors, assigns, heirs, beneficiaries, agents, representatives, and assigns (collectively, the "Claimant Released Parties"). The Paparazzi Parties acknowledge that unknown losses or claims may exist and that present losses may have been underestimated in amount or severity. The Settling Parties took those possibilities into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between the Parties with full knowledge of the possibility of such unknown claims, were given in exchange for a full accord, satisfaction, and discharge of all claims. The Paparazzi Parties further agree that they will not file, participate in, encourage, join, or cause to be filed any claim, suit, investigation, arbitration, proceeding or action of any kind for damages or other relief against the Claimant Released Parties. The Parties agree that this Agreement may be pleaded as a full and complete defense to any and all released claims pursuant to this Agreement. The Parties further acknowledge and consent that the Agreement may be used as the basis for an injunction to halt any action, suit, or other proceeding.

5. **Non-Admission of Liability**. Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of the Settling Parties, their agents, members, employees, officers, directors, managers, affiliates, assigns, parents, predecessors, successors, and/or subsidiaries.

6. **Authority to Execute Agreement.** Each Party represents and warrants to the other Settling Parties that it has all requisite authority or similar power to execute and deliver

this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby and that this Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or similar laws affecting creditors' rights generally, or by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or law).

7. **Confidentiality.** The Parties agree and acknowledge confidentiality as a material term of this Agreement, in the absence of which the Parties would not agree to execute this Agreement. The Settling Parties agree: (1) to keep the terms, content, substance, and existence of this Agreement other than as set forth below, including the facts, circumstances, and/or claims giving rise to this Agreement confidential; (2) to not verbally, non-verbally, expressly, or implicitly communicate, publicize, or otherwise disclose the terms, content, substance, or existence of, or the facts and allegations giving rise to the Litigation that is the subject of this Agreement to any person or entity other than the Settling Parties; and (3) to not transfer an original or any copy of this Agreement to any other person or entity other than the Settling Parties. For the avoidance of doubt, the Settling Parties may disclose this Agreement to their counsel and tax advisors, which expressly shall not include Tracey Reid. In the event of inquiry regarding whether Claimants settled their disputes with the Paparazzi Parties, Claimants or their counsel shall respond by stating they have no comment or stating, "we resolved the dispute and Litigation to each Parties' satisfaction, but I cannot discuss the terms of the resolution," and they may not provide any quantitative or qualitative information about the terms other than as set forth in this Agreement. Notwithstanding the foregoing, the Settling Parties may disclose the terms, contents, substance of, and copies of this Agreement if: (a) asserting any claims or defenses arising in an action to enforce this Agreement; (b) ordered to do so by a court of competent jurisdiction; (c) disclosure is required to accountants (with the exception of Tracy Reid) and state taxing authorities, under federal securities laws, and as otherwise required by law; (d) served with a subpoena or other request for discovery or testimony in a legal proceeding; or (e) disclosure is requested by governmental authorities. If (b), (d), or (e) of this Section occurs, the Party shall notify the other Party within five (5) business days of the respective order, service, or request to the extent legally permitted. If an unredacted version of this Agreement is ordered to be produced by a court of competent jurisdiction, the Agreement shall be produced as confidential under a confidentiality agreement or protective order. Nothing in the foregoing shall be construed to apply to information disclosed, publicized or communicated prior to the Effective Date (e.g., by filings, internet postings, etc.). Notwithstanding, no Party may continue to disclose such information after the Effective Date, even if such information had already been disclosed prior to the Effective Date.

5

8. **Non-Disparagement.** The Parties either through themselves or their agents, will not at any time make, cause to make, publish, or communicate to any person or entity or in any public or private forum any statements or representations (including, without limitation, the repetition or distribution of derogatory rumors, allegations, negative reports or comments) either orally, in gestures, inference, in writing, via electronic transmission, or video, by implication, or otherwise, that defames or disparages the business, reputation, practices, or conduct of the other, including (i) the Paparazzi Parties or Claimants or (ii) Paparazzi's independent consultants or (iii) either Parties' subsidiaries, employees, agents, products attorneys (including the law firms of Nelson Mullins Riley & Scarborough LLP, Buchalter, P.C., and James Dodge Russell & Stephens, P.C.), and insurers (including Auto-Owners Insurance) in relation to or affiliation with the Paparazzi Parties or Claimants. For the avoidance of doubt, this provision also specifically prohibits Claimants from (i) participating in any online groups that discuss the Paparazzi Parties, Paparazzi's employees, or Paparazzi's products or (ii) communicating in any form regarding heavy metal testing or content of Paparazzi's jewelry or Paparazzi's business practices and specifically prohibits Claimants from participating in any online, social media, or other groups that discuss the Paparazzi Parties. Claimants also agree that the independent consultants that sell Paparazzi jewelry are not the Paparazzi Parties' agents. The Paparazzi Parties agree that the customers, independent contractors, or other individuals in the "Crack the Crown" group or affiliated therewith are not the agents of Claimants. Notwithstanding the foregoing, nothing in this Agreement is intended to or shall prevent or preclude any Party from providing truthful testimony and information (1) in response to a legal subpoena or court order to testify in connection with any judicial proceeding or (2) in connection with an investigation or proceeding conducted by any federal, state, or local regulatory or law enforcement agency, in which the provisions of Section 8 apply. Should Claimants breach this provision of the Settlement Agreement, they agree that the provisions set forth in Paragraph 22 shall apply. Claimants agree that this provision applies regardless of where Claimants reside.

9. **Survival**. All obligations of the Settling Parties pursuant to this Agreement, as well as all representations and warranties contained herein shall survive the execution and delivery of this Agreement.

10. **Applicable Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Utah, without giving effect to the conflicts of laws principles (whether of the State of Utah or otherwise) that would result in the application of the laws of any other jurisdiction.

11. **Severability.** If any provision of the Agreement or the application thereof is determined to be invalid by a court, arbitrator or government agency of competent jurisdiction, the Settling Parties agree that such a determination of invalidity shall not affect other provisions or applications of the Agreement which can be given effect

6

without the invalid provisions and thus shall remain in full force and effect or application.

12. **Voluntary Agreement**.  The Settling Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Settling Parties have freely made.  The Settling Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, negotiated over any desired changes, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

13. **Costs.**  Unless otherwise provided in this Agreement, the Settling Parties have agreed to bear their own attorneys' fees and costs, including all costs related to the preparation of any and all documents necessary to enter into this Agreement.

14. **Release of Claims for Physical or Personal Injuries.** This Release and Settlement includes compensation for any physical injuries or personal physical sickness suffered by a Claimant within the meaning of Sections 104(a)(2) and 130(c) of the Internal Revenue Code of 1986, as amended.

15. **Tax Consequences.**  The Settling Parties acknowledge and agree that they are solely responsible for the payment of any and all respective federal, state, city, or local taxes that might be due and owing as a result of any term contained in this Agreement.  The Settling Parties acknowledge that no tax advice has been offered or given by any Party to the other, or such other Party's attorneys, agents, or any other representatives, in the course of these negotiations, and each Party is relying upon the advice of its own tax advisor with regard to any tax consequences that may arise as a result of the execution of this Agreement.

16. **Counterparts.**  This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

17. **Entire Agreement**.  This Agreement constitutes the sole and entire agreement between the Settling Parties and supersedes all prior and contemporaneous statements, promises, understandings, or agreements, whether written or oral.  This Agreement is binding on, and shall inure to the benefit of, any and all successors-in-interest to any Party.

18. **Amendments**. This Agreement may be amended, modified, or altered at any time upon the approval of the Settling Parties; however, any such amendment must be in writing and signed by all Settling Parties in order for such amendment to be of any force and effect.

19. **No Adverse Construction**.  In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

20. **Not Evidence**.  This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement.

21. **Breach and Liquidated Damages.**  In the event of a breach or threatened breach of any provision of this Agreement, the breaching Party or Party threatening breach acknowledges and agrees that the other (non-breaching) Party will suffer irreparable harm and further acknowledges and agrees that the other Party's remedies at law are inadequate, and that the other Party shall be entitled to an immediate injunction restraining such breach or potential breach as well as other equitable relief, but nothing herein shall be construed as prohibiting the other Party from pursuing any other remedy available for such breach or threatened breach.



22. **No Waiver of Breach.**  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provisions hereof shall not be deemed to be a waiver of any other breach of the same or other provisions hereof.

23. **Arbitration.**  Any controversy, dispute, or claim between the Settling Parties to this Agreement, including any claim arising out of, in connection with, or in relation to the interpretation, performance, or breach of this Agreement shall be resolved exclusively and finally by confidential binding arbitration, provided that a party may apply to a court of competent jurisdiction for provisional relief in the form of a temporary

restraining order or preliminary injunction, or other provisional remedy pending appointment of an Arbitrator (as defined below) or pending final determination of a claim through arbitration in accordance with this provision.

a) The arbitration shall be conducted in Salt Lake City, Utah or such other location as the Settling Parties mutually agree. The arbitration proceedings will be conducted in accordance with, and pursuant to the American Arbitration Association's ("AAA") Commercial Arbitration Rules (the "Arbitration Rules"). In the event of any conflict between the Arbitration Rules and the provisions of this Section, the provisions of this Section shall control.

b) There will be a single neutral arbitrator ("Arbitrator"). The Arbitrator must be a retired federal or state judge unless the Settling Parties mutually agree otherwise. The Settling Parties will negotiate in good faith for a period of 14 calendar days after the filing of any demand for arbitration, in an attempt to agree on the Arbitrator to hear the dispute. If the Settling Parties are unable to agree on an Arbitrator within such 14-day period, the Arbitrator will be selected pursuant to the Arbitration Rules; provided, however, that, notwithstanding the Arbitration Rules, each Party shall have the right to (i) preemptively challenge any Arbitrator that has previously arbitrated any matter for either Party and (ii) to challenge and strike once the selected arbitrator for any reason. The Arbitrator will have the same power (but no greater power) to grant all appropriate legal and equitable relief, both by way of interim relief and as a part of the final award, as may be granted by any court of competent jurisdiction, in order to carry out the terms of this Agreement (including awarding declaratory and injunctive relief and damages). All awards and orders of the Arbitrator, including interim relief, may be enforced by any court of competent jurisdiction.

c) The Settling Parties agree that discovery will be limited to each side being granted ten (10) document requests (including subparts), ten (10) interrogatories (including subparts), and ten (10) requests to admit (including subparts) unless otherwise agreed to by the Settling Parties in writing. The Settling Parties agree that no depositions shall be permitted unless otherwise agreed to by the Settling Parties in writing.

d) At the request of any Party, the Arbitrator, attorneys, parties to the arbitration, witnesses, experts, court reporters or other persons present at the arbitration shall agree in writing to maintain strict confidentiality regarding the arbitration proceedings and the award.

e) The final hearing must be concluded within six months of the date the Arbitrator is appointed. The filing claimants shall bear all initial AAA administrative and Arbitrator costs associated with any arbitration. Notwithstanding, the prevailing

party (if a prevailing party is determined to exist by the Arbitrator) in any proceeding or action under this Section shall be entitled, in addition to any other damages or relief awarded, to an award of reasonable attorneys' and accounting fees, expenses and other out-of-pocket costs incurred by such party (including any costs and fees incurred by and payable to the Arbitrator and any costs incurred in enforcing any such award). . Each party to the arbitration shall bear all other costs and fees, including attorney's fees, incurred by that party in the course of the arbitration.

f) The Arbitrator shall render an award and written opinion explaining the award, and the decisions and award of the Arbitrator shall be final and binding upon the Settling Parties. The Settling Parties hereto hereby waive to the fullest extent permitted by applicable law any rights to appeal or to review of such award by any court or tribunal. The Settling Parties agree that the award of the Arbitrator may be enforced against the Settling Parties or their assets wherever they may be found and that a judgment upon such award may be entered in any court having jurisdiction thereof.

24. **Prevailing Party**. Should a Party apply to a court for provisional relief pursuant to Paragraph 23 and prevail in the arbitration, the prevailing party shall be entitled to recover, as an element of the costs of suit and not of damages, reasonable attorneys' fees to be fixed by the court (including costs, expenses, and fees on any appeal).

25. **Successors and Assigns.** Claimants warrant that they have not assigned or transferred any Released Claims, or portion thereof, and that Claimants own all rights to the claims released herein or have the requisite authority to release them. Claimants may not assign or delegate their rights or obligations under this Agreement without the prior written consent of the Paparazzi Parties.

Docusign Envelope ID: E96C5D35-9FA4-46EF-8A77-EECEFC672BD7

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement as of the date set forth below.

DATED: _____     Geraldine Souza

           By: _____

           Name: _____

DATED: _____     Jennifer Carroll

           By: _____

           Name: _____

DATED: _____12/18/2024_____     Paparazzi, LLC

           By: _____Chani Reeve_____
           Name: _____Chani Reeve_____
           Title: _____Member_____

DATED: _____12/18/2024_____     Chantel Reeve

           By: _____Chani Reeve_____

           Name: _____Chani Reeve_____

11

Docusign Envelope ID: E96C5D35-9FA4-46EF-8A77-EECEFC672BD7

DATED: ___12/18/2024___

Ryan Reeve

By: _____

Name: _____
Ryan Reeve

DATED: ___12/18/2024___

Trent Kirby

By: _____

Name: _____
Trent Kirby

DATED: ___12/19/2024___

Misty Kirby

By: _____

Name: _____
Misty Kirby

IN WITNESS WHEREOF, the Settling Parties have executed this Agreement as of the date set forth below.

DATED: __12 / 17 / 2024_____

Geraldine Souza

By: _____

Name: _____


DATED: __12 / 17 / 2024_____

Jennifer Carroll

By: _____

Name: _____


DATED: _____

Paparazzi, LLC

By: _____
Name: _____
Title:


DATED: _____

Chantel Reeve

By: _____

Name: _____

11

Doc ID: 6d51d3f42aa226482691e3a480fc15e8bae37a1e