# EXHIBIT E

**STATE OF WASHINGTON
KING COUNTY SUPERIOR COURT**

STATE OF WASHINGTON,

               Plaintiff,

v.

PAPARAZZI, LLC, D/B/A PAPARAZZI
ACCESSORIES, LLC; MISTY KIRBY,
TRENT KIRBY; CHANTEL REEVE; and
RYAN REEVE,

               Defendants.

NO. 25-2-06781-5 SEA

CONSENT DECREE

**[CLERK'S ACTION REQUIRED]**

## I.  JUDGMENT SUMMARY

| | | |
|---|---|---|
| 1.1 | Judgment Creditor | State of Washington |
| 1.2 | Judgment Debtors | Paparazzi, LLC, d/b/a Paparazzi Accessories, LLC; Misty Kirby; Trent Kirby; Chantel Reeve; and Ryan Reeve |
| 1.3 | Principal Judgment Amount | **$1,900,000.00** |
| 1.4 | Post Judgment Interest Rate: | 12 percent per annum |
| 1.5 | Attorneys for Judgment Creditor: | Ben Brysacz; Joe Kanada Assistant Attorneys General |
| 1.6 | Attorneys for Judgment Debtor: | John Crosetto; Anne Marie Ellis; William Miller |

CONSENT DECREE - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1.7     Plaintiff State of Washington (Washington), having conducted an investigation and commenced this action pursuant to RCW 19.86, the Consumer Protection Act (CPA) and RCW 19.275, the Antipyramid Promotional Scheme Act (APSA); and

1.8     Defendants Paparazzi, LLC, d/b/a Paparazzi Accessories, LLC, and its owners, Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve, having been served with the Summons and Complaint or having waived service; and Washington, appearing by and through its attorneys, Nicholas W. Brown, Attorney General, and Joseph Kanada and Ben Brysacz, Assistant Attorneys General; and Defendants, appearing by and through its attorneys John Crosetto, Anne Marie Ellis, William Miller; and

1.9     Washington and Defendants having agreed on a basis for the settlement of the matters alleged in the Complaint and to the entry of this Consent Decree against Defendants without the need for trial or adjudication of any issue of law or fact. In doing so, Washington and Defendants seek a compromise resolution to this action. Defendants have cooperated with the Attorney General's Office's investigation; and

1.10     Defendants, by entering into this Consent Decree, do not admit the allegations of the Complaint other than those solely as necessary to establish the jurisdiction of this Court; and

1.11     Washington and Defendants agree this Consent Decree does not constitute evidence or an admission regarding the existence or non-existence of any issue, fact, or violation of any law alleged by Washington; and

1.12     Defendants recognize and state this Consent Decree is entered into voluntarily and that no promises, representations, or threats have been made by the Attorney General's Office or any member, officer, agent, or representative thereof to induce them to enter into this Consent Decree, except for the promises and representations provided herein; and

1.13     Defendants waive any right they may have to appeal from this Consent Decree or to otherwise contest the validity of this Consent Decree; and

CONSENT DECREE - 2

1.14 Defendants further agree this Court shall retain jurisdiction of this action and jurisdiction over Defendants for the purpose of implementing and enforcing the terms and conditions of this Consent Decree and for all other purposes related to this matter;

1.15 The Court, finding no just reason for delay;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## II. GENERAL

2.1 This Court has jurisdiction of the subject matter of this action and of the parties.

2.2 The settlement, this Consent Decree or the fact of its entry does not constitute evidence or an admission by any party regarding the existence or non-existence of any issue, fact, or violation of any law alleged by Washington. To the contrary, Defendants have denied and continue to deny any and all wrongdoing of any kind whatsoever and retain, and do not waive, any and all defenses Defendants may have with respect to such matters.

2.3 This Consent Decree fully and finally resolves and forever discharges and releases all claims arising out of or relating to the facts and matters specifically described in the Complaint filed in the above-captioned matter ("Covered Conduct"). This includes civil causes of action for restitution, disgorgement, costs, attorney's fees, or civil penalties that the Attorney General of Washington has asserted or could have asserted, filed, or to cause, assist in bringing or permitting to be brought, filed or claimed for any released claim or cause of action under the CPA and APSA related to the Covered Conduct that the State of Washington has filed or may in the future file against Defendants and its respective past and present officers, directors, including but not limited to owners and founders Misty and Trent Kirby, Chantel and Ryan Reeve, and his/her/its heirs, executors, administrators, principals, partners, employees, representatives, agents, affiliates, parents, subsidiaries, operating companies, predecessors, assigns and successors past and present. Notwithstanding the above, Defendants' material failure to comply

CONSENT DECREE - 3

with this Consent Decree shall permit the Attorney General of Washington to take such further action against Defendants as provided for herein.

2.4     The failure of any party to exercise any rights under this Consent Decree shall not be deemed a waiver of any right or future rights.

2.5     If any part of the Consent Decree shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder of the Consent Decree, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

2.6     For purposes of this Consent Decree, all definitions specifically pertain to conduct, customers and consultants in the state of Washington or conduct directly or indirectly affecting Washington residents.  Nothing in this Consent Decree is meant to prevent or limit Paparazzi or its Consultants from making Retail Sales in Washington regardless of whether a Consultant receives a commission on the Retail Sale, provided such Retail Sales comply with this Consent Decree and Washington law.

### III.     DEFINITIONS

3.1     "Accompanied By" means that the accompanying information or disclosure is difficult to miss, easily noticeable, and easily understandable by ordinary consumers, including in all of the following ways: (1) in any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented; (2) in any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring disclosure is made in only one means; (3) a visual disclosure, including a disclosure using an interactive electronic medium, by its size, contrast, location the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed,

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

read, and understood; (4) an audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it; (5) the disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears; (6) the disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications; and (7) the disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

3.2 "Business Opportunity" means any written or oral business arrangement that consists of providing payment, services, or other consideration for the right or means to offer, sell, or distribute a product or service.

3.3 "Buyback Period" means length of time during which Defendants must buy back eligible products from Consultants. The Buyback Period in the State of Washington shall run for one year beginning on the date of entry of this Consent Decree.

3.4 "Product" means any item sold or distributed by Defendants and any of their agents or assigns that meets the definition of "jewelry" in California Health & Safety Code § 25214.1(f).

3.5 For purposes of this Consent Decree, "Buyback Eligible Product" means all products meeting the definition of "jewelry" in California Health & Safety Code § 25214.1(f) for which any of the following exist: (1) a failed test for either lead or nickel, (2) an inconclusive or ambiguous result for lead or nickel, or (3) no test results indicating whether the product contains lead or nickel. This definition applies to all Paparazzi products, without regard to whether the product was sold as part of Paparazzi's Fashion Fix program. For purposes of this

CONSENT DECREE - 5

definition, "test," "failed," "inconclusive," and "ambiguous" shall refer to the independent testing standards described in Paragraph 4.8.H, *infra*.

3.6 "Compensation" means any money or other thing of value paid or provided to a Consultant in exchange for their participation in any business activity for Paparazzi.

3.7 "Consultant" means any person who purchased any product from Paparazzi for the purpose of participating in any Business Opportunity, including former participants.

3.8 "Effective Date" means the date on which this Consent Decree is fully executed and entered by the Court.

3.9 "Income Disclosure Statement" means a graphical depiction of the financial outcomes of Consultants in a given year, presented in the form depicted in Appendix A. Paparazzi may elect to use either national data (i.e., all Consultants in the United States) or Washington-specific data (i.e., Washington Consultants) to generate an Income Disclosure Statement.

3.10 "Washington Consultant" means any Consultant who at any time provided Paparazzi with a Washington state billing address.

3.11 "Washington Customer" means any person in the State of Washington who purchased any Paparazzi product who is not also enrolled as a Consultant. "Washington Customer" means any Customer who at any time provided Paparazzi or a Consultant with a Washington state billing address.

3.12 "Retail Sales" means sales of Paparazzi products from Paparazzi or its Consultants to Customers above wholesale price, or where a Consultant purchases Paparazzi products from other Consultants at or above the manufacturer's suggested retail price.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# IV.   INJUNCTIONS

4.1    The injunctive provisions of this Consent Decree shall apply to Defendants and to its successors, assigns, and others acting in concert with Defendants.[1]

4.2    **Prohibited Marketing**

A.    Thirty-One (31) days after the Effective Date of this Consent Decree, Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering a business opportunity to Washington residents or in the State of Washington, whether directly or through an intermediary, that violates RCW 19.275, the Antipyramid Promotional Scheme Act, by implementing the following restrictions and mandated conduct as set out below.

4.3    **Ban on Certain Business Practices**

A.    Thirty-One (31) days after the Effective Date of this Consent Decree, Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from advertising, marketing, promoting, or offering, or assisting in the advertising, marketing, promoting, or offering of a Business Opportunity in the State of Washington that:

i.    Determines a Consultant's Compensation, or eligibility to receive Compensation, based primarily on that Consultant's purchase of goods or services or other Consultant's purchase of goods or services;

ii.    The Compensation Plan may require the purchase of a starter pack or charge a fee to join as a Consultant, but no part of the price of the starter pack or the fee may be used to determine or calculate commissions paid to any Consultant;

iii.    Requires any mandatory purchases in order to qualify for rank or compensation, however, the compensation plan may establish a minimum amount of monthly Retail Sales necessary in order to participate in the compensation plan, such minimum amount

---

[1] The form and scope of this language, as used throughout this document, is intended to have the same form, scope, and application as subsection (d) of Washington Court Rule 65.

CONSENT DECREE - 7

may not be changed more than annually and must be clearly communicated to Consultants at the time of sign-up and again whenever changed; or

iv. Bases compensation, qualification, or rank on any of the following factors: (1) the number of people in a Consultant's downline; (2) the depth of a participant's downline; or (3) a Consultant's personal volume; or (4) the purchase volume of the Consultants in a Consultant's downline. For the avoidance of doubt, Products purchased by a Consultant from Paparazzi at wholesale prices and then re-sold by the Consultant to a Customer (the "Second Sale") may be included in Compensation calculations upon the Second Sale.

B. Defendants shall not allow a prospective participant in Washington to sign any participation agreement, policies and procedures, or any other binding agreement, or pay any consideration, or participate in any training until seven (7) days after providing the prospective participant with an Income Disclosure Statement and obtaining written confirmation from the prospective participant that they have received and reviewed the Income Disclosure Statement. Defendants shall not communicate with the prospective participant in any manner during that seven (7) day period, and Defendants shall instruct all existing participants in its Policies and Procedures that existing participants may not contact prospective participants during this seven (7) day period between review of the Income Disclosure Statement and the prospective participants' entering into any agreement with Defendants.

C. For purposes of calculating Compensation, Customer sales made with credit cards or other electronic forms of payment shall qualify. Customer sales made with cash shall only qualify for Compensation if there is an electronic record created at the time of the sale that provides the information required in Section 4.4 (A), below.

D. Compensation may not be paid on the basis of purchases made by Consultants in the State of Washington, whether for individual use, gifting, or resale.

4.4 **Required Policies and Procedures.** Thirty-One (31) days after the Effective Date of this Consent Decree, Defendants, whether acting directly or indirectly, are permanently

CONSENT DECREE - 8

restrained and enjoined from advertising, marketing, promoting, or offering, or assisting in the advertising, marketing, promoting, or offering of a Business Opportunity to Washington residents or in the State of Washington or making Retail Sales to Washington Customers unless such a Business Opportunity and/or Retail Sales comply with the following:

A. Collection of Sales Information. Defendants shall use commercially reasonable efforts (including but not limited to PayPal, Square, Shopify, Venmo, Zelle, Premiere App) to collect from Consultants and maintain in a standardized format the following information for sales entered into any Point of Sale System:

    i. The method of payment;

    ii. The products and quantities sold;

    iii. The date of sale;

    iv. The price paid by the purchaser; and

    v. The purchaser's email address.

B. Verification of Retail Sales. The following requirements shall apply regarding Retail Sales:

    i. Defendants shall take commercially reasonable steps, including both random and targeted audits, to monitor Retail Sales in order to ensure that they are genuine sales of products, rather than an attempt to manipulate the compensation plan.

    ii. Defendants shall take commercially reasonable steps, including both random and targeted audits, to monitor Retail Sales in order to ensure that they in fact occurred as reported in the information collected and maintained pursuant to Paragraph 4.4.A (Collection of Sales Information). The audits provision shall last for a period of 10 years or when Paparazzi ceases offering compensation for recruitment and Retail Sales to multiple levels of consultants in the state of Washington, whichever is sooner.

    iii. In implementing the preceding paragraphs, Defendants shall monitor Retail Sales to identify sales to Customers or Consultants by (1) cross checking

CONSENT DECREE - 9

purchaser first and last names for matches with Customers or Consultants first and last names and (2) cross checking purchaser ship-to addresses with participant addresses.

C. Refund Policies. Defendants' policies and procedures shall include, and Defendants shall enforce, the following policies related to product refunds or buybacks to/from residents in Washington:

i. A Washington resident who cancels his/her/its participation in the Business Opportunity within sixty (60) days of the date of enrollment may return her/his/its entire inventory purchased directly from Paparazzi for a full refund. Defendants will pay for any shipping costs associated with such return. Any returned products determined to be ineligible for a refund will be forfeited by the Consultant.

ii. Defendants shall repurchase, at the Consultant's written request, all currently marketable inventory purchased from Paparazzi within one year from its date of purchase; and the refund must not be less than ninety percent of the original net cost, less any consideration received by the buyer when he or she bought the products being returned. Products shall not be considered currently marketable if returned for repurchase after the products' commercially reasonable usable or shelf life has passed, or if it has been clearly disclosed to the buyer that the products are not subject to the repurchase obligation because the products are seasonal, discontinued, or special promotion products. For the avoidance of doubt, products purchased through the Fashion Fix program shall be considered current and marketable inventory.

iii. Defendants shall not reduce any refund amount based on Retail Sales made by the Washington Consultant.

iv. Defendants shall not reduce any refund amount based on compensation paid by Defendants to the Washington consultant, unless such compensation was received by the Washington consultant when he/she/it bought the products being returned. This Consent Decree shall not prohibit Defendants from clawing back compensation paid to a

CONSENT DECREE - 10

Consultants' upline if the Consultant returns product and the upline received compensation for the purchase of that product under Defendants' prior compensation plans. For avoidance of doubt, this provision does not authorize Defendants to offer compensation on the basis of purchases at any time after the entry of this Consent Decree nor does it authorize Defendants to reduce a Consultant's refund amount on the basis of any prior compensation earned.

v. Prior to the completion of a purchase of product by a Consultant from Defendants, for any purchase that involves seasonal, discontinued, special promotion products, or any other product not subject to the Inventory Buyback policy in Defendants' Policies and Procedures or Paragraph 4.4.C.ii (definition of seasonal/discontinued product) of this Consent Decree a "Pop-up" window must disclose that the purchase involves products not subject to repurchase and the Consultant must acknowledge the disclosure in order to continue with the purchasing process

4.5 **Buyback Program for Eligible Products**

A. No later than sixty (60) days after the date of entry of this Consent Decree, Defendants shall implement a program that allows Washington Consultants and Washington Customers to sell Buyback Eligible Products back to Paparazzi ("Buyback Program"). The Buyback Program shall run during the entire Buyback Period, and contain the following components:

i. Paparazzi must purchase the Buyback Eligible Products for 100% of the original purchase price as depicted on the proof of purchase. Proof of purchase must reflect sale by Paparazzi or a Paparazzi Consultant and should include the date of the purchase, item number or "P-number", description of the item by type, color, price paid, sales tax if paid, Consultant name when they opened their account and Consultant ID (if the Consultant ID is available). At a minimum, proof of purchase must include an item description, price paid and tax paid (if any), and the selling Consultant's name. This minimum required information need not be contained in the same document, and Washington Customers may provide multiple

CONSENT DECREE - 11

documents to support their proof of purchase. Each Eligible Product needs to be in an individual sealed bag with the P number of the Product included for each bag (i.e. ziplocked, taped, stapled, or otherwise closed). Items with the same P number can be placed together in the same bag. Customers making a return that lacks any of the minimum required proof of purchase information will be contacted once by Paparazzi or a third party within 60 days of receipt to request supplemental proof of purchase information. Sales made on third-party sites (where the Consultant is not the administrator of the site such as i.e. Amazon, E-bay, etc.) will not be eligible for Buyback Program);

ii. Paparazzi will only purchase Buyback Eligible Products as defined above and as set forth below in Section 4.5B;

iii. Washington Consultant or Washington Customer is limited to one buyback of eligible products during the Buyback Period;

iv. Paparazzi must pay any reasonable costs of third party shipping incurred by the Washington Consultant or Washington Customer as a result of sending Buyback Eligible Products back to Paparazzi. Paparazzi will not pay for return shipping for ineligible product, and must clearly and conspicuously disclose that any returned products determined to be ineligible for a refund will be forfeited by the Washington Consultant or Washington Customer;

B. Paparazzi must pay within sixty (60) days any Washington Consultant or Washington Customer after receiving the Buyback Eligible Products from the Washington Consultant or Washington Customer. No later than sixty (60) days after the date of entry of this Consent Decree, Defendants shall provide Washington with a final, public catalog of every product that is eligible to be purchased back from Washington Consultants or Washington Customer. The catalog shall include a product number, name of the item, a picture of the item, and the dates each product was sold. Washington may disseminate the catalog publicly.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

C. No later than sixty (60) days after the date of entry of this Consent Decree, Defendants must notify the public of the Buyback Program. This notice is subject to Washington's approval and must include a clear and conspicuous notice on each of the following:

i. the home page on Paparazzi's website within 60 days after the date of entry of this Consent Decree for the length of the Buyback Period;

ii. on Paparazzi's public social media account pages on Instagram, Facebook, and X (these may be one-time posts, but cannot be deleted, hidden, or obscured for the length of the Buyback Period); and

iii. in the "back office" resource page for consultants.

D. No less than two times during the Buyback Period, Defendants shall email or mail the buyback notice to the most recent email address or billing address Paparazzi has on file for current and former Washington Consultants. The first notification must occur no more than thirty (30) days after the date of entry of this Consent Decree. The second notification must occur no less than thirty (30) days before the end of the Buyback Period. Defendants shall provide written confirmation to Washington when the notices are sent.

E. Defendants shall authorize all Consultants to disseminate information about the Buyback Program to Customers and to place notice regarding the Buyback Program on Consultant's own websites, social media accounts, or other mediums that advertise the sale of Paparazzi products.

F. Defendants shall create a support email address and telephone number to address questions from Washington Consultants and Washington Customers regarding the Buyback Program. Defendants shall in a reasonable timeframe, respond to questions and inquiries from Consultants and Customers regarding the Buyback Program. The email address and phone number must be included in any notice that Defendants are required to publish pursuant to this Consent Decree.

CONSENT DECREE - 13

G. Washington may also publicly display and disseminate notice about the Buyback Program.

H. Defendants may not resell any Buyback Eligible Products repurchased through the Buyback Program unless Defendants confirm to Washington, in writing, that the repurchased inventory complies with the testing standards in paragraph 4.8H of this agreement. All remaining Buyback Eligible Products that Defendants purchase from Washington Consultants and Customers may be retained by Paparazzi or may be destroyed or disposed of in accordance with federal, state, and local laws and regulations. Retained products not eligible for resale may not be donated, gifted, sold, or transferred into commerce or the public for any reason.

4.6 **One-Time Repurchase Program for Unsold Inventory**

A. No later than sixty (60) days after the date of entry of this Consent Decree, Defendants shall implement a program that allows current and former Washington Consultants to sell any remaining unsold inventory purchased between January 1, 2017 and the Effective Date—that does not qualify as Buyback Eligible Products—back to Paparazzi ("Inventory Repurchase Program"). The existence of this one-time Inventory Repurchase Program does not alter Paparazzi's obligation to offer an on-going inventory repurchase agreement pursuant to RCW 19.275.020, and a Washington Consultant who participates in the one-time Inventory Repurchase Program in this Section and who remains enrolled or re-enrolls as a Consultant may return inventory in the future pursuant to RCW 19.275.020. The Inventory Repurchase Program shall contain the following components:

i. Paparazzi must purchase the remaining inventory for 100% of the original purchase price paid to Paparazzi including sales tax. Proof of purchase should be a receipt generated by Paparazzi. At a minimum, proof of purchase must reflect sale by Paparazzi and must include the date of the purchase, item number or "P-number", description of the item by type, color, price paid, sales tax if paid, and consultant name used when they opened account and consultant ID (if available). Washington agrees to these minimum proof of purchase

CONSENT DECREE - 14

requirements based on Paparazzi's express representation that at all material times it has provided receipts containing the minimum required information in connection with every purchase. Sales made on third-party (where the Consultant is not the administrator of the site such as i.e. Amazon, E-bay, etc.) will not be eligible for Inventory Repurchase Program); anyone who purchased for less than the amount paid to Paparazzi (i.e., less than $2.75) is excluded;

ii. Paparazzi will only purchase inventory on a Paparazzi black hang tag in good, resellable condition. Each inventory item needs to be in an individual sealed bag with the P number of the item included for each bag (i.e. ziplocked, taped, stapled, or otherwise closed). Items with the same P number can be placed in the same bag;

iii. Consultant is limited to one inventory repurchase during the Inventory Repurchase Program, which shall run concurrently with the Buyback Period, i.e., for one year from the date of entry of this Consent Decree;

iv. Paparazzi must pay any reasonable costs of third party shipping incurred by the Washington Consultant, and must clearly and conspicuously disclose that any returned products determined to be ineligible for a refund will be forfeited by the Consultant;

v. Paparazzi must pay Consultant within sixty (60) days after receiving the unsold inventory and all of the required information from the Consultant.

B. No later than sixty (60) days after the date of entry of this Consent Decree, Defendants must notify current and former Washington Consultants who purchased inventory on or after January 1, 2017, of the Inventory Repurchase Program for the State of Washington. This notice is subject to Washington's approval and must include a clear and conspicuous notice on each the following:

i. the home page on Paparazzi's website within 60 days after the date of entry of this Consent Decree for the length of the buyback program;

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

ii.     on Paparazzi's public social media account pages; including Instagram and Facebook (these may be one-time posts, but cannot be deleted, hidden, or obscured for the length of the Inventory Repurchase Program); and

iii.     in the "back office" resource page for consultants.

C.     No less than two times during the Inventory Repurchase Program, Defendants shall email or mail the notice described in Section 4.6B above to the most recent email address or billing address Paparazzi has on file for current and former Washington Consultants who purchased inventory on or after January 1, 2017. The first notification must occur no more than thirty (30) days after the date of entry of this Consent Decree. The second notification must occur no less than thirty (30) days before the end of the Inventory Repurchase Program. Defendants shall provide written confirmation to Washington when the notices are sent.

D.     Defendants shall create a support email address and telephone number to address questions from Consultants regarding the Inventory Repurchase Program notice. Defendants shall in a reasonable timeframe, respond to questions and inquiries from Consultants regarding the Inventory Repurchase Program. The email address and phone number must be included in any notice that Defendants are required to publish pursuant to this Consent Decree.

E.     Washington may also publicly display and disseminate notice about the Inventory Repurchase Program.

4.7     **Administration of Buyback Program and Inventory Repurchase Program**

A.     The Buyback Program and Inventory Repurchase Program (collectively, the "Programs") will be administered by Paprazzi or a third party who will receive detailed instructions regarding the intake and qualification for both of the Programs.  Such instructions and training materials shall be shared with Washington for review and approval prior to use. All notices to Consultants and Customers required under this Consent Decree will instruct the Consultants and Customers to direct any inquiries regarding the Programs to Paparazzi or a third

CONSENT DECREE - 16

party at a toll free telephone number or dedicated email address. Paparazzi or a third party will have individuals who will take any calls, and will be trained to answer any questions regarding the Programs. Upon request either by phone or email, Paparazzi or a third party will send prepaid labels to a Consultant or Customer with instructions regarding eligibility of products for return along with a description of the process. Such instructions regarding eligibility shall be shared with Washington for review and approval prior to use. Once Paparazzi or a third party receives any Buyback Eligible Products, or unsold inventory, it will examine the items, and make a determination on whether the items are eligible for a refund under either Program. If the items are eligible, the Company will process the return, which will generate a reimbursement to be issued to the Consultant or Customer within 60 days of Paparazzi or a third party's receipt of the items from the Consultant or Customer and its determination that the items are eligible for buy back. Paparazzi or a third party will keep a record of all items sent to it, which items were accepted for return, and which items were rejected and the reasons why the return was denied. Washington Consultants and Washington Customers must provide a valid mailing address to receive a check or reimbursement. At Paparazzi's sole election, if the Washington Consultant or Washington Customer is seeking a buyback for 5 or fewer items, they will not be required to send back the product(s), but rather must (1) send a picture of the product(s) that will be verified by Paparazzi or a third party, (2) attest to proper disposal of the product, and (3) properly dispose of the product. If the product still has a black hang tag attached, Washington Consultant or Washington Customer will hole punch the pink crown and silver Paparazzi logo or cut the elastic of a ring, to indicate that the product is not resellable. Paparazzi will clearly and conspicuously disclose that any returned products determined to be ineligible for a refund will be forfeited by the Washington Consultant or Washington Customer. Paparazzi shall ensure that the State of Washington receives regular updates regarding all returns received from Washington Consultants and Washington Customers that were accepted, rejected, and the reasons for such decisions, with such updates delivered to Washington no less frequently than every 30 days

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

during the duration of the Programs. Items returned via the Programs specified in Sections 4.5 and 4.6 will be forfeited by Washington Consultants and/or Customers, and will be either destroyed or returned to Paparazzi for re-sale or repurposing as appropriate.

B. The State of Washington may send additional correspondence to Washington Consultants and/or Customers who submit returns to the Programs. Such correspondence will not be subject to review or approval by Paparazzi prior to delivery. Paparazzi shall make best efforts to cooperate with Washington in identifying names, contact information, and refund determinations for any and all Washington Consultants and/or Customers who participate in the Programs.

4.8 **Representations and Disclosures**

A. Defendants are permanently restrained and enjoined from misrepresenting to Washington residents or making misrepresentations in the State of Washington, or assisting others in misrepresenting to Washington residents or making misrepresentations in the State of Washington, including by providing others with the means and instrumentalities with which to represent, expressly or by implication, including through discussion of lifestyle changes tied to compensation from the Business Opportunity available to Washington residents:

      i. That participants will or are likely to achieve substantial sales, income, or profit;

      ii. Except to the extent such statements comply with Paragraph 4.8.B, the amount of sales, income, or profit that participants have actually earned;

      iii. The amount of time or effort required to earn an amount of compensation or to advance in the Business Opportunity; and

      iv. The reason participants do not earn substantial compensation, including representations that participants fail because they do not devote substantial or sufficient effort or are not active or do not participate for sufficient duration.

CONSENT DECREE - 18

B. Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from making any representation to Washington residents or making any representation in the State of Washington, expressly or by implication, regarding the amount of sales, income, or profits that a participant in a Business Opportunity available to Washington Residents can expect to earn unless the representation is non-misleading and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence sufficient to substantiate that the representation is true. Any representation regarding the amount of sales, income, or profits that a participant has earned or can expect to earn, must be Accompanied By an Income Disclosure Statement or reference to an Income Disclosure Statement, in the form identified in Paragraph 4.8.D below. For purposes of this Paragraph, a "reference to" an Income Disclosure Statement must meet the same requirements in Paragraph 3.1's definition of "Accompany By."

C. Defendants shall include an Income Disclosure Statement, in the form identified in Paragraph 4.8.D below, on its publicly available website. Starting in 2026 (for 2025) the Income Disclosure Statement shall contain a disclosure regarding the total of Retail Sales between and among Consultants (as tracked and disclosed pursuant to Paragraph 4.4.B.iii) as a percentage of annual total of recorded Retail Sales.

D. The Income Disclosure Statement identified in Paragraphs 4.8.B and 4.8.C should be in substantially the form and coloration and include the information provided in Appendix A thereto. Starting in 2025 no later than April 15 of a given year, Defendants shall update the Income Disclosure Statement with data from the previous year. The Income Disclosure Statement must reflect the income of any and all individuals who participated as Consultants for any part of the calendar year, including those who participated for less than an entire year for any reason, including those who quit, were terminated, or were reclassified into any other category of participation by Paparazzi. Outcomes for participants who were Consultants for less than a calendar year shall not be presented in a separate disclosure or

CONSENT DECREE - 19

graph. The Income Disclosure Statement will be required in 2025 and 2026. Thereafter, if no Business Opportunity is offered in the State of Washington, there is no Washington Income Disclosure Statement requirement.

E. Defendants shall not allow a prospective participant in the State of Washington to sign any participation agreement, policies and procedures, or any other binding agreement until seven (7) days after providing the prospective participant with an Income Disclosure Statement and obtaining written confirmation from the prospective participant that they have received and reviewed the Income Disclosure Statement. Defendants shall not communicate with the prospective participant in any manner during that seven (7) period, and Defendants shall instruct all existing participants in its Policies and Procedures that existing participants may not contact prospective participants during this seven (7) day period between review of the Income Disclosure Statement and the prospective participants' entering into any agreement with Defendants.

F. If Defendants market, sell, or distribute products labeled with an age restriction, such limitation shall also be clearly and contemporaneously included on all advertising and marketing materials. Defendants shall also notify all Consultants that any age restriction must be clearly and conspicuously included on all marketing materials.

G. Defendants shall not market or advertise any products intended for use by adults with images depicting children wearing Defendants' products. Defendants may not market or promote products to be worn by children ages twelve years old or under. Defendants shall notify all Consultants of the restrictions in this paragraph via email and a clear and conspicuous notice on Paparazzi's website. Defendants shall also amend their policies and procedures to include the restrictions described in this paragraph and make violations of these restrictions subject to disciplinary action up to and including termination of consultant agreements.

H. Defendants shall not market or advertise any products as free of lead, nickel, or any other compound or chemical unless the results of Defendants' regular, independent

CONSENT DECREE - 20

testing indicates the products contain no detectible amount of the compound or chemical. For purposes of this paragraph, independent testing means testing of Defendants' products (including each and every product line and each and every separate manufacturing run) for potentially harmful compounds including but not limited to antimony, arsenic, cadmium, lead, and nickel. For five years after the Effective Date, Testing shall be performed by a Consumer Product Safety Commission certified laboratory and should indicate whether the tested products meet or exceed ASTM F2999 and California's Proposition 65 specifications for all compounds tested. Defendants may not rely on manufacturing and/or sourcing partners to perform or subcontract this testing.

4.9 **Compliance Provisions:** Defendants shall consent to the following terms and conditions regarding compliance and monitoring:

A. Defendants confer upon Washington and its agents all the rights and powers necessary to enforce the provisions of this Consent Decree.

B. Within 90-days of the entry of this Consent Decree, Defendants shall implement:

i. An inventory tracking system that allows the company to track products shipped to Washington Consultants and Customers;

ii. For any purchase that involves seasonal, discontinued, special promotion products, or any other product not subject to the Inventory Buyback policy in Defendants' Policies and Procedures, a "Pop-up" window must disclose that the purchase involves products not subject to repurchase and the participant must acknowledge the disclosure prior to the completion of a purchase of product by a participant from Defendants in order to continue with the purchasing process; and

CONSENT DECREE - 21

iii.    An individualized notice (via email or US mail) to all current Consultants informing them of the change to, or cessation of, the Business Opportunity in Washington. A copy of this notice should also be available in the back office.

C.    For the years 2025 through 2030, Defendants shall maintain for the reasonable review of Washington provide the following information, which Paparazzi will update annually:

i.    Retail Sales data sufficient for Washington to verify that Defendants are collecting and maintaining sales information as required by Paragraph 4.4.A;

ii.    A written report describing the steps Defendants are taking to monitor and ensure that Retail Sales are genuine sales of products, rather than an attempt to manipulate the compensation plan, as required by Paragraph 4.4.B;

iii.    A written report describing the steps Defendants are taking to monitor and ensure that Retail Sales in fact occurred as reported in the information collected and maintained pursuant to Paragraph 4.4.A;

iv.    Data sufficient for Washington to confirm that Defendants are complying with the limitations and requirements set forth in Paragraph 4.4.C (refund policies);

v.    Data sufficient for Washington to confirm the accuracy of any Income Disclosure Statements;

vi.    A written report summarizing the compliance efforts that all vendors have performed regarding income claims. Such report shall include a list identifying all instances in which Paparazzi identified a probable compliance issue (whether or not it identified the issue as a result of notification from a vendor) as well as a summary of the specific compliance issue and how it was resolved.

vii.    For any time period during which Paparazzi is not offering a Business Opportunity in Washington, the data collection and reporting requirements described

CONSENT DECREE - 22

in Paragraph 4.9.C may be limited to Retail Sales to Washington Residents (i.e., any person or entity with a Washington shipping address).

viii.    If after any two (2) consecutive years Paparazzi has not offered a Business Opportunity in Washington, Paparazzi may suspend the reporting requirements in 4.9C, but if Paparazzi resumes its Business Opportunity within the five years specified above, it must resume the reporting requirements.

D.    In order to ensure that an Income Disclosure Statement is prominent, clear, and conspicuous when made available in compliance with Paragraph 4.8, Defendants shall:

i.    Within 30 days of the date of entry of this Consent Decree, implement a prominent button labelled "Income Disclosure Statement" next to any link to enroll or join as a participant in Defendants' Business Opportunity, which button shall link to a current Income Disclosure Statement;

ii.    Within 30 days of the date of entry of this Consent Decree, include a hyperlink on the page in which prospective Washington Consultants provide their information as part of the sign up process along with the following language: "More financial information can be found here: Income Disclosure Statement." The font should be at least as large and the same color as the font soliciting the participants' information and the hyperlink must appear on the webpage above the fields soliciting the participants' information; and

iii.    For any participant that provides a Washington billing address when enrolling, the participant must be provided with or directed to an Income Disclosure Statement promptly after entering their Washington billing address. This paragraph is satisfied if every enrolling participant, regardless of their state of residence, is provided with or directed to the Income Disclosure Statement after entering their billing address.

E.    Upon request by Washington, Defendants shall provide contact information (name, address, telephone number, and email address) regarding all Washington

CONSENT DECREE - 23

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Consultants. Defendants will not interfere with any attempt by Washington to periodically interview Washington Consultants.

F. Within sixty (60) days of the date of entry of this Consent Decree, Defendants shall provide Washington with the most up-to-date addresses, telephone numbers, and email addresses of all current and former Washington participants.

G. For five years after the date of entry of this Consent Decree, Defendants shall conduct independent testing (as defined in Paragraph 4.8.H) for all products sold, distributed, or marketed by Defendants. Defendants shall provide copies of all testing to Washington annually upon reasonable request, redacted as to manufacturer name and address.

4.10 **Injunction Amendment Process.** The parties agree that should Defendants resolve allegations Covered Conduct with other private parties or federal or state regulators not parties to this Consent Decree, Defendants shall provide the State with notice of said resolution (by notifying the State of the entry of a consent decree or other final judgment) within ten (10) days of said resolution. Within sixty (60) days of receipt of Defendants' notification of said resolution, if Washington determines that the injunctive terms of such resolution(s), taken as a whole, are materially more favorable than those contained in this Consent Decree, then Washington shall notify Defendants in writing within fifteen (15) days regarding its position that another agreement's terms are materially more favorable and Washington and Defendants shall meet and confer regarding whether and how favorable the injunctive terms of such resolution(s) are compared to those contained in this Consent Decree. Within ten (10) days after the meet and confer, Defendants shall notify Washington in writing whether it, in whole or in part, agrees with Washington's proposal or contests the applicability of this provision in good faith. The parties shall promptly commence negotiation over the relevant terms. Once Washington and Defendants have mutually agreed that certain injunctive terms of such resolution are materially more

CONSENT DECREE - 24

favorable than those contained in this Consent Decree, this Consent Decree shall be amended accordingly. This Section shall expire one year after the date of entry of this Consent Decree.

## V.  MONETARY PAYMENT

5.1     Pursuant to RCW 19.86.080, Washington shall recover and Defendants shall pay Washington the amount of **$1,900,000.00** for costs and reasonable attorney's fees incurred by Washington in pursuing this matter, for monitoring and potential enforcement of this Consent Decree, for future enforcement of RCW 19.86, or for any lawful purpose in the discharge of the Attorney General's duties at the sole discretion of the Attorney General.

5.2     Payment referenced in paragraphs 5.1 shall be made no later than thirty (30) days after the Effective Date by valid check or wire transfer payable to "State of Washington Attorney General's Office," delivered to the Office of the Attorney General, Attention, Margaret Farmer, Litigation Support Manager, 800 Fifth Ave., Suite 2000, Seattle, WA 98104.

5.3     Defendants' failure to timely make payments as required by this Consent Decree, without written agreement by Washington, shall be a material breach of this Consent Decree.

## VI.  ENFORCEMENT

6.1     Defendants shall be in full compliance with all requirements and obligations this Consent Decree imposes on Defendants by the date of entry of this Consent Decree, except as otherwise indicated herein.

6.2     If Defendants violate a material condition of this Consent Decree, Washington may seek the imposition of additional conditions, civil penalties of up to $125,000.00 per violation pursuant to RCW 19.86.140, restitution, injunctive relief, attorney's fees, costs, and such other remedies as the Court may deem appropriate at an evidentiary hearing in which Defendants have an opportunity to be heard, if the Court finds by a preponderance of the evidence that Defendants have violated a material condition of this Consent Decree. In any

CONSENT DECREE - 25

successful action to enforce this Consent Decree against Defendant, Defendants shall bear Washington's reasonable costs, including reasonable attorneys' fees.

6.3     Jurisdiction is retained by this Court for the purpose of enabling any party to this Consent Decree to apply to the Court, to the extent permitted herein, for enforcement of compliance with this Consent Decree, to punish violations thereof, or otherwise address the provisions of this Consent Decree.

6.4     Nothing in this Consent Decree shall grant any third-party beneficiary or other rights to any person who is not a party to this Consent Decree.

6.5     Nothing in this Consent Decree shall be construed to limit or bar any other governmental entity or person from pursuing other available remedies against Defendants or any other person.

6.6     Under no circumstances shall this Consent Decree, or the name of the State of Washington, this Court, the Office of the Attorney General, the Consumer Protection Division, or any of their employees or representatives be used by Defendants or any of its respective owners, members, directors, successors, assigns, transferees, officers, agents, servants, employees, representatives, and all other persons or entities in active concert or participation with Defendants, in connection with any selling, advertising, or promotion of products or services, or as an endorsement or approval of Defendants' acts, practices, or conduct of business.

6.7     Washington shall be permitted, upon advance written notice of thirty (30) days to Defendants, reasonable access to inspect, and/or copy relevant, non-privileged business records or documents in possession, custody, or under control of Defendants to monitor compliance with this Consent Decree; provided that the inspection and copying shall avoid unreasonable disruption of Defendants' business activities.

6.8     Public Records Act. Nothing in this Consent Decree shall be construed to alter the Washington Attorney General's Office's (AGO) obligations under the Public Records Act, RCW 42.56 or any other statute, administrative rule, or court rule. However, if at any time the

CONSENT DECREE - 26

AGO receives a request pursuant to the Public Records Act and the AGO intends to release records designated in this action as Confidential Information, the AGO will, in the course of responding to the request, give written notice and a copy of the request to the designating party, and also provide the designating party with ten (10) business days from notification to seek and obtain protection from the Court. Defendants may request deletion of documents and/or records produced to the State pursuant to this Consent Decree no earlier than 6 years after production of the documents and/or records. Such request shall be made in writing. If upon receipt of the request to delete documents and/or records, such deletion is not prohibited by applicable statutes or regulations, and provided the State does not reasonably anticipate use of the documents and/or records in connection with enforcement of any provision of this Consent Decree, the State will delete such documents and/or records.

6.9     To monitor compliance with this Consent Decree, Washington shall be permitted to serve interrogatories pursuant to the provisions of CR 26 and CR 33 and to question Defendants or any officer, director, agent, or employee of Defendants by deposition pursuant to the provisions of CR 26 and CR 30, provided that Washington attempts in good faith to schedule any deposition at a time convenient for the deponent and his or her legal counsel.

6.10     This Consent Decree in no way limits Washington from conducting any lawful non-public investigation to monitor Defendants' compliance with this Consent Decree or to investigate other alleged violations of the CPA and APSA, which may include but, is not limited to, interviewing participants or former employees of Defendants.

6.11     This Consent Decree shall be binding upon and inure to the benefit of Defendants' successors and assigns. Defendants and their successors and assigns shall notify the Attorney General's Office at least thirty (30) days prior to any change-in-control of Defendants that would change the identity of the corporate entity responsible for compliance obligations arising under this Consent Decree; including, but not limited to, dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution

CONSENT DECREE - 27

of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that with respect to any proposed change in the corporation about which Defendants and its successors and assigns learn less than thirty (30) days prior to the date such action is to take place, Defendants and its successors and assigns shall notify the Attorney General's Office as soon as is practicable after obtaining such knowledge.

6.12    Nothing in this Consent Decree shall impose an obligation on Paparazzi that is less restrictive than Paparazzi's obligations under federal, state, or local law, rule, regulation, or guidance. In the event there is a conflict between this Consent Decree and the requirements of federal, state, or local laws, such that Paparazzi cannot comply with this Consent Decree without violating these requirements, Paparazzi shall document such conflicts and notify the Attorney General that it intends to comply with the federal, state, or local requirements to the extent necessary to eliminate the conflict. Within sixty (60 days) after receipt of a notification from Paparazzi referenced above, the Attorney General's Office may request a meeting to discuss the steps Paparazzi has implemented to resolve the conflict, and Paparazzi shall comply with any such reasonable request. Nothing in this Consent Decree shall relieve Paparazzi of its obligation to comply with all local, state and federal laws.

6.13    Nothing in this Consent Decree shall prohibit Paparazzi from complying with the terms of any court order. Nothing in this Consent Decree may be voided or otherwise rendered inoperative by a contrary court order in a different jurisdiction. To the extent Defendants believe a court order in a different jurisdiction may impact their compliance with the terms of this Consent Decree, Defendants shall document such conflicts and notify the Attorney General pursuant to the timelines and procedures described in Paragraph 6.12 above.

6.14    This Consent Decree represents the entire agreement between the Parties, and there are no representations, agreements, arrangements, or understandings, oral or written,

CONSENT DECREE - 28

between the Parties relating to the subject matter of this Consent Decree that are not fully expressed herein or attached hereto.

6.15　Any notice or other communication required or permitted under this Consent Decree shall be in writing and delivered to the following persons or any person subsequently designated by the parties:

For Plaintiff:

> Ben Brysacz (ben.brysacz@atg.wa.gov)
> Joe Kanada (joe.kanada@atg.wa.gov)
> Assistant Attorneys General
> Attorneys for Plaintiff State of Washington
> 800 Fifth Avenue, Suite 2000
> Seattle, WA 98104
> (206) 464-7744

For Defendants:

> John Crosetto (jcrossetto@buchalter.com)
> Anne Marie Ellis (aellis@buchalter.com)
> William Miller (wmiller@buchalter.com)

6.16　The Clerk of the Court is ordered to immediately enter the foregoing Judgment and Consent Decree.

DONE IN OPEN COURT this _____ day of _____03/03/2025_____, 2025.

_____
JUDGE/COURT COMMISSIONER

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**Counsel for Defendants**

_____
John Crosetto
Anne Marie Ellis
William Miller
BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
jcrosetto@buchalter.com
aellis@buchalter.com
wmiller@buchalter.com

February 27, 2025

_____
Date

CONSENT DECREE - 30

**For Plaintiff State of Washington**

Joe Kanada                                    2/27/25
_____              _____
Ben Brysacz, WSBA #54683                      Date
Joe Kanada, WSBA #55055
Assistant Attorneys General
Attorneys for Plaintiff State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Ben.Brysacz@atg.wa.gov
Joe.Kanada@atg.wa.gov

Presented by:

NICHOLAS W. BROWN
Attorney General

_____
BEN BRYSACZ, WSBA #54683
JOE KANADA, WSBA #55055
Assistant Attorneys General
Attorneys for Plaintiff State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Notice of Presentment Waived and
Approved as to Form by:

BUCHALTER

_____
JOHN CROSETTO, WSBA #36667
ANNE MARIE ELLIS
WILLIAM MILLER
Attorneys for Defendants
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337

CONSENT DECREE - 32

# PAPARAZZI U.S. DISCLOSURE STATEMENT FOR [YEAR]

## [YEAR] OUTCOMES FOR PARTICIPANTS IN PAPARAZZI



**Profit = money *received* from Paparazzi plus any additional retail income minus money *paid* to Paparazzi for the year. Participants lost money if their profit was negative.**

***Financial outcomes:*** The graph above shows the share of Paparazzi participants who earned a profit or loss in their Paparazzi business in [YEAR]. It includes all individuals who participated in the Paparazzi business opportunity in the U.S. in [YEAR].

***Expenses:*** The graph above includes money participants paid to Paparazzi for fees, starter kits, product purchases, tickets for conventions or training programs, shipping and handling and sales aids. Possible additional expenses not represented in the graph above may include:

- Additional fees or tickets for conventions or other training programs
- Travel
- Lodging
- Food

- Childcare
- Packaging & shipping
- Purchasing product from other consultants, and
- Other business expenses.

***Cancellation or refund policy:*** By law, Paparazzi must buy back all currently marketable inventory purchased within the past year for a refund of no less than 90% of the purchase price if requested by a business opportunity Participant. Paparazzi cannot pay less than 90% of the purchase price by subtracting or deducting other amounts, including but not limited to deducting shipping costs, bonuses, or retail income from the refund.

***[Beginning with 2025 IDS] Retail Sales Between Participants:*** [XX] percentage of [YEAR] retail sales were retail sales between and among Participants.

# King County Superior Court
# Judicial Electronic Signature Page

Case Number:       25-2-06781-5  SEA

Case Title:          STATE OF WASHINGTON VS PAPARAZZI, LLC, ET AL.

Document Title:      Decree

Date Signed:        03/03/2025

_____

Commissioner: Comm. Jonathon Lack

Key/ID Number:     *224377898*

Page Count:       This document contains 34 page(s) plus this signature page.